Bettina E. ROSEN, n/k/a Bettina Camden–Ishimaru,
Appellant,

v.

Carl E. ROSEN, Appellee.

No. S–11890.

Supreme Court of Alaska.

Sept. 21, 2007.

---

**54.** 20 AAC 05.630(a)(5).

**55.** *Rose,* 647 P.2d at 160–62.

**56.** *See Commercial Fisheries Entry Comm'n v. Russo,* 833 P.2d 7 (Alaska 1992).

Bettina Camden–Ishimaru, pro se, Portland, Oregon.

Paul D. Stockler, Law Office of Paul D. Stockler, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Bettina Camden–Ishimaru moved for an increase in child support in 2004, five years after her divorce from Carl Rosen became final. The superior court denied the motion to modify support. Bettina then moved to establish a judgment for child support arrearages and unpaid orthodontic expenses. In March 2005 the superior court denied the motion and instead signed a partial modification agreement, which the parties had submitted to the court in 2001 and which the court had neglected to sign when initially submitted. The court made this order effective January 2001. The court also denied Bettina's motion to have Carl pay for orthodontic expenses, reasoning that because Carl had not consented to the treatment as required by the agreement, he was not solely responsible for the uncovered expenses. Bettina appeals: (1) the superior court's decision to approve the earlier agreement and declare it effective January 2001; (2) its decision to deny her motion for modification; and (3) its order that unpaid orthodontic expenses be shared by the parties. We remand the issue of the unpaid orthodontic

expenses for a determination whether Carl acted reasonably and in good faith when he refused to consent to the treatment. We affirm the decision of the superior court in all other respects.

## II. FACTS AND PROCEEDINGS

Carl Rosen and Bettina Camden–Ishimaru (formerly Rosen) married in 1991. They have two children: Taylor, born in 1992, and Madison, born in 1996. Bettina and Carl separated in 1998. On July 2, 1999, Superior Court Judge Peter A. Michalski entered a decree of divorce incorporating the terms of the parties' child custody, child support, spousal support, and property settlement agreement. The agreement, signed by both parties in May 1999, provided for joint legal and shared physical custody of the couple's two children. Carl, a physician, agreed to pay child support to Bettina in the amount of $2,000 per month. The agreement also provided that Carl would provide health and dental insurance for the children and "would be responsible for all insurance deductibles and all of the children's medical, orthodontic and dental expenses ... provided, that all such health care treatment must be reasonable and ... that no elective medical or other health care shall be undertaken without [Carl's] prior knowledge and consent."

In December 2000 Carl and Bettina signed a partial modification of visitation, custody, and child support. The partial modification agreement stated that Bettina had decided to move with the children to Portland, Oregon and requested that the court issue an order modifying the parties' agreement. The parties agreed that Carl would have the children for a long weekend each month and for the summer. They agreed that Bettina would pay for the children's travel for the summer visit and that Carl would pay for all other visits. The partial modification agreement also reduced Carl's child support payments, stating that his child support for June, July, and August would be reduced by fifty percent to $1,000. The $2,000 child support in the remaining months was to remain "fixed" and was "not [to] be adjusted for inflation, or otherwise, for the remainder of the support." The agreement also stated that each party

had been advised by counsel and "freely and voluntarily" entered into the agreement. Although the parties filed the agreement with the court in January 2001, the court took no action in response to the filing of the partial modification agreement and did not sign it at the time of filing.

In March 2004 Bettina filed a motion to modify child support. She requested an increase in child support based on Carl's increased income, a change in medical insurance costs, and increases in the costs of child rearing, including costs associated with day care, orthodontics, mental health care, unpaid visitation costs, and inflation.

Carl opposed the motion, claiming that Bettina had not shown a material change in circumstances as required by Alaska Civil Rule 90.3 and refuting Bettina's claimed costs for day care, orthodontics, mental health care, and unpaid visitation. Carl agreed to a prospective adjustment for inflation. He referred to and submitted a copy of the couple's partial modification agreement with his motion.

On June 14, 2004, the court issued an order denying Bettina's motion to change child support. In August 2004 Bettina moved to establish a judgment against Carl for child support arrears. Bettina submitted a worksheet from the Alaska Child Support Enforcement Division showing that Carl owed $10,785.45 in arrears and $3,143.16 in interest. This arrearage calculation apparently assumed that the 1999 agreement was still in effect and that Carl was obligated to pay the monthly payments of $2,000 throughout the entire year plus a cost-of-living increase added by the division. Bettina also requested a judgment requiring payment for unpaid health care bills for orthodontic treatment for Taylor and moved to compel disclosure of Carl's tax returns. Carl requested and was granted a hearing. The court denied Bettina's motion to compel disclosure of tax returns.

In January 2005 the court held a hearing on the motion to establish child support arrears. After the hearing, the court found that it had failed to sign the parties' partial modification agreement due to a clerical oversight. The court approved and signed

the agreement, declaring it effective as of January 2001, when it was originally filed with the court. The court reasoned that it was not making a retroactive modification because it "would have signed the [partial] modification agreement at the time it was filed if not for the clerical oversight." The court ordered that child support arrears be recalculated to reflect the lower payments provided for in the agreement. The court also found that Taylor's orthodontic expenses should be paid equally by each party given Carl's lack of prior consent to the expenses as provided in the agreement.[1] This appeal followed.

## III. STANDARD OF REVIEW

Trial courts have broad discretion in making child support determinations[2] and deciding whether to modify child support orders.[3] We review child support awards and decisions to modify child support for an abuse of discretion.[4] An abuse of discretion occurs "only if based on the record as a whole this court is left with a definite and firm conviction that a mistake has been made."[5] The interpretation and effect of the parties' agreement are questions of law to which we apply our independent judgment.[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion by Approving the Partial Modification Agreement To Be Effective January 2001.

Private agreements regarding child support are subject to the requirements of Civil Rule 90.3; parties may not agree to a level of child support lower than the rule requires or lower than that provided for in a court order without judicial approval.[7] Bettina implies that the level of support in the partial modification agreement is lower than would be required by the rule. She maintains that the agreement imposes a visitation credit, which she argues is not appropriate in shared custody situations. Carl counters that the partial modification agreement meets the requirements of Rule 90.3 and is valid. Because the partial modification agreement requires Carl to pay child support exceeding the level of support that would have been required under Rule 90.3 and because modifications may be made effective as of the time of initial filing, we agree with Carl that the superior court properly found the partial modification agreement valid as of January 2001.

### 1. The partial modification agreement met the minimum requirements of Rule 90.3.

The partial modification agreement reduced the level of child support from that required by the 1999 child support order. In July 1999 the court determined that Rule 90.3 required Carl to pay $1,604 monthly, or $19,248 annually. But because Carl's income exceeded $72,000 and because the parties had agreed to payments of $2,000 monthly, the court awarded more child support than the rule required—$2,000 monthly for a total of $24,000 annually.

Signed in December 2000, the partial modification agreement reduced Carl's obligation to $1,000 in June, July, and August but required $2,000 per month for the remaining months. As a result, Carl's annual support

---

1. The agreement provides that Carl is responsible for "all of the children's medical, orthodontic and dental expenses ... provided, that all such health care treatment must be reasonable and ... that no elective medical or other health care shall be undertaken without [Carl's] prior knowledge and consent."

2. *Zimin v. Zimin*, 837 P.2d 118, 123 n. 8 (Alaska 1992).

3. *Olmstead v. Ziegler*, 42 P.3d 1102, 1104 (Alaska 2002).

4. *Faulkner v. Goldfuss*, 46 P.3d 993, 996 (Alaska 2002).

5. *Flannery v. Flannery*, 950 P.2d 126, 129 (Alaska 1997) (internal quotations and citations omitted).

6. *Id.*

7. *Cox v. Cox*, 776 P.2d 1045, 1048 (Alaska 1989); *see also Nix v. Nix*, 855 P.2d 1332, 1334 (Alaska 1993) ("[A] child support waiver is *not* valid and enforceable *until* a court has reviewed and approved the waiver's substantive adequacy under Rule 90.3.").

after the partial modification agreement was $21,000 annually.

The level of support required by the partial modification agreement—$21,000 annually—exceeded the $19,248 that Rule 90.3 required at the time the divorce decree was entered. But as Bettina correctly notes, we issued an order effective October 15, 1999 to increase the Rule 90.3 income cap from $72,000 to $84,000.[8] She argues that as a result of the 1999 increase in the income cap, the partial modification agreement provided for less support than required by Rule 90.3.

The change in the income cap affects the validity of the agreement because parties' agreements must meet the requirements of Rule 90.3 at the time they are signed.[9] When Bettina and Carl signed the agreement in 2000, Rule 90.3(a)(2)(B) would have required $22,680 annually if Bettina had primary physical custody and if there were no visitation credit.[10] The initial divorce decree declared that Bettina and Carl would share physical custody, and child support is calculated differently when there is shared physical custody. But Rule 90.3(b)(1)(C) provides that if the shared custody award calculation yields a figure that "is higher than the amount of support which would be calculated under paragraph (a) assuming primary custody, the annual support is the amount calculated under paragraph (a)." Thus, the rule limits a parent's obligation in a shared physical custody arrangement to the amount calculated under paragraph (a). As a result, at

the time Carl and Bettina signed the partial modification agreement, Rule 90.3 would have required Carl to pay a maximum of $22,680 annually—or $1,890 monthly—in child support payments, assuming no visitation credit applied.

But Rule 90.3(a)(3) also allows a reduction in child support payments by up to seventy-five percent "for any period in which the obligor parent has extended visitation of over 27 consecutive days." Because the superior court found that Carl exercised summer visitation for at least two months each summer, he was eligible for at least two months' visitation credit under Rule 90.3(a)(3).[11] Thus, at the time of the agreement, Carl's minimum obligation under paragraph (a) would have been $19,845.[12] The partial modification agreement required Carl to pay $21,000 and therefore exceeded the minimum level of support required by the rule as of December 1999 when Carl and Bettina signed the agreement. Because agreements regarding child support may be enforced if they comply with Rule 90.3, the partial modification agreement is enforceable.

## 2. The superior court did not abuse its discretion in making the agreement effective January 2001.

Rule 90.3(h)(2) prohibits retroactive modification of child support, providing:

Child support arrearage may not be modified retroactively, except as allowed by AS

---

**8.** *See* Supreme Court Order No. 1362 (Oct. 15, 1999). Bettina also suggests that the $100,000 cap currently in place should be used. *See* Alaska R. Civ. P. 90.3(c)(2). But because the question is whether the agreement complied with Rule 90.3 at the time it was signed, the current income cap is not relevant to the determination whether the agreement is valid.

**9.** *See, e.g., Flannery,* 950 P.2d at 128 (referring to income cap "at the time the parties entered into the agreement").

**10.** Rule 90.3(a)(2)(B) provides that the non-custodial parent's income must be multiplied by .27 for two children. Applying the income cap of $84,000 which applied at the time under Rule 90.3(c)(2), Carl's payments would be $22,680 under paragraph (a) if Bettina had primary physical custody.

**11.** Bettina argues that a visitation credit is not appropriate because the agreement provided for

shared custody and because the partial modification agreement did not increase the children's overnights with Carl. But because Rule 90.3(b)(1)(C) provides that shared custody support cannot exceed the level of support for primary custody, the visitation credit allowed under Rule 90.3(a)(3) applies and is relevant to the calculation of Carl's support obligation under Rule 90.3(a). Moreover, the question whether visitation changed from the original divorce decree to the partial modification agreement is irrelevant to the question whether the partial modification agreement met the requirements of Rule 90.3 when signed.

**12.** This amount includes ten months at $1,890 per month, plus two months with visitation credit of seventy-five percent (payments reduced to $472.50 for two months), for a total of $19,845.

25.27.166(d). A modification which is effective on or after the date that a motion for modification ... is served on the opposing party is not considered a retroactive modification.

Bettina argues that the court retroactively modified support in its March 2005 order that declared the agreement effective as of January 2001. She also relies on the rule that agreements waiving or reducing child support payments are not valid until a court has reviewed and approved the agreements.[13] Carl responds that the parties filed the partial modification agreement in January 2001. He contends that this joint filing was equivalent to a motion for modification and argues that the rule allows modifications relating back to the time the motion is filed. The superior court reasoned that it was not making a retroactive modification because it "would have signed the modification agreement at the time it was filed if not for the clerical oversight."[14]

We agree with Carl that under Rule 90.3(h)(2), there was no retroactive modification in this case when the court signed the agreement in March 2005 and declared it effective January 2001. While Bettina is correct that a modification of child support will not be given retroactive effect, Rule 90.3(h)(2) defines when a retroactive modification occurs in the context of an agreement modifying court-ordered child support. And Rule 90.3(h)(2) specifically provides that a modification that is effective after the date a motion is served on the opposing party is not

a retroactive modification. We have previously recognized this, holding that "absent good cause, a modified child support order should be effective from the date the parent receives notice that a modification is being considered."[15] We have explained that

> service of the motion ... gives the opposing party both fair warning that support may change and an opportunity to reassess, even before the court rules, the correct amount of support. This gives an opportunity to adjust consumption patterns in anticipation of modification, and thus minimize prejudice when relief is granted effective as of the service date.[16]

In this case, both parties signed the partial modification agreement.[17] The court declared the partial modification agreement and its revised child support obligations effective January 2001, when the agreement was initially filed with the court. Certainly a stipulation to modify child support, signed by both parties, provides even greater notice that child support will be modified than receipt of a motion to modify. Because both parties had notice of this modification and had agreed to its terms, the court did not issue a retroactive modification when it declared the partial modification agreement effective January 2001.[18]

**B. The Superior Court Did Not Abuse Its Discretion when It Denied Bettina's Motion for Modification.**

We must also evaluate Bettina's claims that circumstances in 2004, when she filed

---

13. *See Murphy v. Newlynn*, 34 P.3d 331, 333 (Alaska 2001) ("[A]greements to waive child support are not valid until a court has reviewed and approved the waiver's substantive adequacy under Rule 90.3, and even a court-approved waiver will be given only prospective effect.").

14. Bettina characterizes the court's action as an improper Alaska Civil Rule 60(b) motion to correct a mistake. Carl characterizes it as a proper Rule 60(a) motion to correct a clerical error. Instead, we conclude that the court simply issued an order *nunc pro tunc* ("now for then").

15. *State, Dep't of Revenue, Child Support Servs. Div. v. Wise*, 122 P.3d 212, 214 (Alaska 2005).

16. *Id.* (quoting *Boone v. Boone*, 960 P.2d 579, 585–86 (Alaska 1998)).

17. Bettina contends that "the document was never served on the parties before or after it came into the [s]uperior court." But because the document was signed and filed jointly by both parties, each party had notice of the document, and service on the other party was not required.

18. Bettina also argues that because Carl failed to act to enforce the agreement within three years, the statute of limitations renders the agreement ineffective. But Bettina first raised this issue in her April 2005 Motion for Reconsideration. Because an issue raised for the first time in a motion for reconsideration is not timely raised and not properly before this court on appeal, we do not consider her argument. *Stadnicky v. Southpark Terrace Homeowner's Ass'n*, 939 P.2d 403, 405 (Alaska 1997).

her motion for modification, warranted modification of the level of child support. We hold that the superior court did not abuse its discretion in denying her motion for modification.

Rule 90.3(h)(1) governs the modification of child support awards, providing:

> A final child support award may be modified upon a showing of a material change of circumstances as provided by state law. A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order.

Bettina argues that the superior court erred when it did not require Carl to submit documentation of his income, did not make factual determinations regarding income, and did not assess whether the fifteen percent materiality rule of Rule 90.3(h)(1) applied. She also suggests the superior court should have considered the intent of the original divorce decree in determining whether a modification was warranted, given that the original decree provided for payments in excess of Rule 90.3 requirements and given that she alleged Carl's income increased over one hundred percent since the divorce. The court denied Bettina's motion to modify child support in June 2004.[19]

Carl responds that Bettina waived the issue of the fifteen percent materiality rule by failing to raise it at the trial level. He also contends she waived the issue whether the superior court erred in failing to require disclosure of financial information because her motion to modify support was not at issue when the court entered the order from which she appealed. Carl contends that the June 2004 order denying Bettina's motion to modify child support resolved all pending child support issues. Thus, he claims the time for appeal began running then.

■ Bettina has not waived her arguments regarding material change justifying a modification. Contrary to Carl's contention, the issue was before the superior court. Bettina's initial motion argued that support should be modified because of increases in Carl's income and the cost of child rearing. Carl cites this court's decision in *Mattfield v. Mattfield* for the proposition that an order that "functionally resolve[s] all pending child support issues" amounts to a final judgment.[20] Although Carl is correct that the superior court issued an order denying Bettina's motion in June 2004, this order did not resolve all pending child support issues. Because the court did not declare the partial modification agreement valid until March 2005, the June 2004 order did not resolve all pending child support issues. When the court denied Bettina's motion to modify child support in June 2004, the base level of support was in dispute. As a result, the issue of child support and its modification was not functionally resolved until the court's March 2005 order. Because we hold that Bettina has not waived the issue, we now consider her argument.

■ As a threshold matter, we note that neither the existence of an agreement nor the provision in the original agreement that "[t]his Agreement shall not be modified by the parties except by written instrument signed before a notary" prevents a judicial determination that modification is appropriate under Rule 90.3. In *Robinson v. Robinson*, we rejected the notion that the existence of a prior child support agreement alone was sufficient to reject a motion for modification.[21] We emphasized that "[a]n agreement for child support cannot prevent modification, because the parties may not waive the application of Rule 90.3."[22]

The question thus arises: Did the superior court properly determine that no modification was required when Bettina filed her

---

19. The court's March 2005 findings of fact and conclusions of law addressed only the issue of orthodontic treatment and the validity of the partial modification agreement.

20. 133 P.3d 667, 674 n. 7 (Alaska 2006).

21. 953 P.2d 880, 884 (Alaska 1998).

22. *Id.* (citing *Aga v. Aga*, 941 P.2d 1260, 1262 (Alaska 1997)); *see also Flannery*, 950 P.2d at 129–32 (holding that agreement to pay more than required by Rule 90.3 did not prevent father from seeking modification under Rule 90.3(h)(1)).

motion in 2004? We conclude that it did. Although Bettina argues that the $100,000 income cap applies, we adopted this cap effective April 15, 2005.[23] Because Bettina filed her motion to modify child support in 2004, the $84,000 income cap applied to her request. As we discussed above, Carl's child support payments at the time comported with the requirements of Rule 90.3.[24] As a result, Bettina's motion to modify finds no support in the income cap of Rule 90.3. Bettina's argument that the original decree intended to grant "a level of support that was slightly higher than the Civil Rule 90.3 level" does not support modification; the level of support after the partial modification agreement remained slightly higher than the Rule 90.3 level at the time the motion for modification was filed.

■ We also reject Bettina's argument that the court abused its discretion by declining to modify child support despite her claim that she obtained health insurance for the children. Bettina's original motion to modify child support claimed that Carl insured the children for "catastrophic coverage" only and requested that support payments be adjusted accordingly. Bettina does not argue that she would reach the fifteen percent materiality threshold of Rule 90.3(h)(1) based on health insurance payments. As a result, she has not demonstrated reversible error. Moreover, we note that the divorce agreement requires Carl to provide health and dental insurance. And Carl submitted documentation of the health and dental insurance that he provided for the children. Even if Bettina were correct that Carl provided inadequate insurance coverage, the agreement makes him responsible for all deductibles and all other uncovered medical expenses. In other words, under the terms of the agreement, if Carl purchased inadequate coverage,

he would be the party responsible for paying for the uncovered expenses. Under these circumstances, Bettina has not shown a material change in circumstances resulting from health insurance expenses. We therefore conclude that the superior court did not abuse its discretion when it denied Bettina's motion to modify child support.[25]

**C. The Superior Court Erred when It Ordered the Orthodontic Expenses To Be Paid Equally by Each Party Without a Finding that Carl Acted Reasonably.**

In January 2005 Bettina submitted a "Motion Requesting Unpaid Health Care Bills of the Minor, Taylor Rosen as a Judgment," seeking reimbursement for orthodontic expenses and noting that two orthodontists had recommended immediate treatment for Taylor to which Carl refused to agree. Noting that Carl did not consent to Taylor's treatment, the superior court found the expense to be an uncovered medical expense. The court reasoned that although the parties' original agreement makes Carl responsible for orthodontic expenses, the agreement also requires that all health care treatment be reasonable and that no treatment be undertaken without Carl's prior knowledge and consent. The court applied Rule 90.3(d)(2)'s provision that uncovered medical expenses shall be allocated equally between the parties and ordered Carl to pay half the expense directly to the orthodontist.

Bettina argues that the court abused its discretion when it ordered that Taylor's orthodontic expenses be paid equally by each party. She appears to argue that the court should not have relied on Rule 90.3(d)(2) because the divorce decree requires that Carl reimburse one hundred percent of uncovered expenses. She also argues that Rule 90.3 requires that the party who did not obtain

---

23. *See* Supreme Court Order No. 1526 (Apr. 15, 2005) (increasing cap from $84,000 to $100,000).

24. We note that the $100,000 income cap would apply to any motion for modification submitted after April 15, 2005.

25. Bettina argues that she did not file the motion to change custody, support, or visitation submitted to Judge Michalski's chambers and that the motion was "falsified" and had no certificate of service. The exact nature of this argument is

elusive. Bettina signed both the motion and the certificate of service herself. She did not object to the motion before the superior court—indeed, it is not clear why she would object to her own motion or what prejudice she alleges resulted. Indeed, if Bettina were correct that the court erred in accepting the filing of this motion, her entire appeal would be in doubt. We find no error in the superior court's acceptance of Bettina's motion.

the care must reimburse the other party within thirty days and that she has not received payment for ten months. Carl responds that the superior court found that Carl did not consent to the treatment and properly relied on Rule 90.3(d)(2). Carl maintains that his ability to pay is not relevant and notes that Bettina does not contest the factual finding that Carl did not consent to treatment.

The 1999 divorce agreement provides that Carl is responsible for all insurance deductibles and all medical and dental expenses, expressly including orthodontic expenses. But as the superior court correctly noted, the agreement requires "that all such health care treatment must be reasonable and ... that no elective medical or other health care shall be undertaken without [Carl's] prior knowledge and consent." [26]

Bettina does not contest the court's finding that Carl did not consent to the treatment. But her briefing suggests that Carl withheld consent unreasonably or in bad faith. Bettina insists that Carl's argument before the superior court that he did not agree with the orthodontist's opinion "perverts the intention of the contract." According to her, the original intention was that "he would respect all other specialties ... [and][n]ot simply override specialists['] opinions—because he doesn't want to pay for services."

■ Like other legally enforceable agreements, this agreement includes an implied covenant of good faith and fair dealing.[27] Although the superior court found that Carl did not consent to Taylor's orthodontic expenses, it did not make any findings as to whether Carl's actions comported with the intent of the contract or whether he acted in good faith. Accordingly, we remand the issue of orthodontic expenses for a determination on whether Carl reasonably withheld consent for the orthodontic treatment. If the trial court finds that Carl unreasonably

withheld consent for the orthodontic treatment expressly included in the parties' agreement, it should order Carl to reimburse Bettina for one hundred percent of these expenses.

### D. The Superior Court Did Not Abuse Its Discretion in Not Ordering Cost-of-Living Adjustments.

Bettina argues that the court should have awarded cost-of-living adjustments. Her motion for modification claimed an increase in costs for child rearing due to inflation. The original agreement provided that support payments would be adjusted for inflation. The partial modification agreement provided that the "$2,000 child support shall remain fixed and not be adjusted for inflation, or otherwise, for the remainder of the support."

Although Carl argues that neither Rule 90.3 nor the parties' agreement requires cost-of-living adjustments, he notes that he agreed to cost-of-living adjustments in the proceedings before the superior court. Because Carl has agreed to cost-of-living adjustments, this issue is moot.

## V. CONCLUSION

For the reasons outlined above, we AFFIRM the decision of the superior court declaring the partial modification agreement effective January 2001 and rejecting Bettina's motion to modify child support. We VACATE its order that Carl pay only half of Taylor's orthodontic expenses and REMAND for consideration whether Carl acted reasonably and in good faith when he refused to consent to the orthodontic expenses.

BRYNER, Justice, not participating.

---

**26.** The partial modification agreement does not alter the terms for health expenses.

**27.** In commercial contracts that require one party's consent for specified events, we have found an implied requirement that consent be exercised in good faith. *Tesoro Alaska Petroleum Co. v. State,* 757 P.2d 1045, 1051–52 (Alaska 1988) (holding that subjective good faith standard ap-

plies to commercial contract without a satisfaction clause and requires that a party not exercise a contractual right with an improper motive such as spite or desire to harm the other party). "Settlement agreements should be interpreted as contracts provided that they meet minimal contractual requirements." *Gaston v. Gaston,* 954 P.2d 572, 574 (Alaska 1998).