Matthew J.P. MILLETTE, Appellant,

v.

Carol Jean MILLETTE, Appellee.

No. S–13315.

Supreme Court of Alaska.

Oct. 8, 2010.

Matthew J.P. Millette, pro se, Anchorage, Appellant.

No appearance by Appellee.

Before: CARPENETI, Chief Justice, FABE, and WINFREE, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

A father appeals a child support judgment from the superior court. The $1,178.75 judgment against him consisted primarily of medical bills incurred on behalf of his child. The medical bills were for natural health care that the child received, and that the mother paid for, in order to treat the child's autism. The father contests the judgment because it included amounts for nutritional supplements and associated shipping and handling charges, which he claims are not health care expenses as a matter of law. Further, the father asserts that the superior court abused its discretion by ordering him to pay the bills, some of which he claims to have already paid, and some of which were incurred before his child support order became effective. Finding no error in the superior court's order, we affirm the judgment in all respects.

## II. FACTS AND PROCEEDINGS

### A. Past Litigation And Child Custody Arrangements

We first addressed the separation of Carol Jean Millette and Matthew Millette in January 2008.[1] The relevant history of their relationship is excerpted here from that opinion:

Carol Jean Millette and Matthew Millette were married for almost five years before becoming enmeshed in a protracted and contentious divorce and custody dispute. The couple met online in 1997 through the Christian Connection, an internet dating service. At that time, Carol Jean was living in Colorado and Matthew was living in Alaska, married with two young sons. . . . In April 1998 Carol Jean moved to Alaska to be with Matthew and lived in an apartment across from his. Matthew divorced his first wife in August 1998 and married Carol Jean a month later. . . . The relationship became rocky after they moved in together. . . .

[John][2] was born July 21, 2000. As John grew out of his infancy and became a toddler Carol Jean began to notice [early signs of autism]. In December 2002, when John was almost two and a half years old, he was formally diagnosed with autism. John has since been seen by many doctors and specialists including . . . Dr. Grove, a naturopathic doctor who works with "Defeat Autism Now" and who advises Carol Jean on John's diet. . . .

In June 2003 Carol Jean and Matthew separated. Both Matthew and Carol Jean have since reported misconduct by the oth-

---

**1.** *Millette v. Millette,* 177 P.3d 258 (Alaska 2008).

**2.** We use a pseudonym for the child.

er parent to the police and the Office of Children's Services (OCS).

Through a domestic violence protective order Matthew obtained custody of John for the first several months following the parties' separation. In February 2004, following the expiration of that order, Carol Jean and Matthew agreed to share custody on a week-on/week-off basis. In July 2004 the court-ordered child custody investigation report recommended that Carol Jean have sole legal and primary physical custody.... In August 2004 the superior court modified interim custody, giving Carol Jean sole legal and physical custody of John....

[The superior court] entered the divorce decree on October 29, 2004.[3]

After a separate custody trial, the court awarded Carol Jean sole legal and primary physical custody of John.[4] Matthew was given visitation rights so long as he enrolled in anger management classes.[5] Additionally, the superior court issued a child support order. That order requires each parent to pay half of John's "reasonable health care expenses" up to $5,000 not covered by insurance. The order states that health care expenses "includ[e] medical, dental, vision and mental health counseling expenses." The order cites Alaska Rule of Civil Procedure 90.3, which addresses health care expenses in an almost identical manner.[6]

### B. Expenses Incurred

Before and after the court issued the child support order in October 2005, Carol Jean incurred and paid health care expenses on behalf of John. From March to August 2005, John was treated at Natural Health Center LLC. After the order, from October 2005 to September 2006, John was treated at the Center for Autism Research and Education,

LLC (CARE). The bills from these clinics include charges for nutritional supplements and their shipping and handling, in addition to charges for appointments. The bills from Natural Health Center totaled $698.75, including $340 for appointments, $317.75 for supplements, and $41 for shipping. The bills from CARE totaled $1,246.23, including $800 for appointments, $437.48 for supplements, and $8.75 for shipping.

### C. Proceedings

In August 2008 Carol Jean filed a motion in the superior court seeking reimbursement from Matthew for half of the above expenses. The superior court ordered Matthew to pay half of the expenses ($972.50) and $206.25 in attorney's fees. Matthew moved for reconsideration and the superior court denied the motion.

Matthew appeals the judgment against him, which totaled $1,178.75.

### III. STANDARD OF REVIEW

■ We apply de novo review to child support issues involving a question of law such as interpreting a civil rule,[7] interpreting the terms of a child support order,[8] and determining the correct method for calculating child support.[9]

■ Where no question of law is involved, superior courts have broad discretion in making child support determinations, and we review the superior court's decision for an abuse of discretion.[10] "An abuse of discretion occurs only if based on the record as a whole this court is left with a definite and firm conviction that a mistake has been made."[11]

---

3. *Id.* at 260–61.

4. *Id.* at 261.

5. *Id.*

6. *See* Alaska R. Civ. P. 90.3(d)(2), (f)(5).

7. *J.L.P. v. V.L.A.*, 30 P.3d 590, 594 (Alaska 2001).

8. *Rosen v. Rosen*, 167 P.3d 692, 695 (Alaska 2007) (citing *Flannery v. Flannery*, 950 P.2d 126, 129 (Alaska 1997)).

9. *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008).

10. *Rosen*, 167 P.3d at 695.

11. *Id.* (internal quotation marks omitted).

## IV. DISCUSSION

We address, in turn, the four points Matthew raised on appeal.

### A. The Superior Court Did Not Err In Concluding That Nutritional Supplements Are A Reasonable Health Care Expense.

■ Matthew claims the superior court erred when it ordered him to pay for nutritional supplements, or "vitamins," for his autistic child. Matthew asserts that supplements are a component of the child's nutrition, should be covered by the monthly child support Matthew pays, and should not require a special judgment for health care expenses. Matthew also makes assertions that arguably go to "reasonableness." He asserts that Carol Jean could have purchased less expensive supplements and that supplements are frequently recommended by one's doctor, but are optional.

Because we conclude that the nutritional supplements in the present case were both a health care expense and reasonable, we affirm the superior court's order requiring Matthew to pay half.

### 1. Nutritional supplements may be considered a health care expense.

According to the child support order, Matthew and Carol Jean must each pay half of the child's "reasonable health care expenses not covered by insurance."[12] The child support order states health care expenses "includ[e] medical, dental, vision and mental health counseling expenses." Further, the child support order cites to Civil Rule 90.3, which defines health care expenses almost identically.[13] Because "health care expenses" is not a technical term, we interpret it "according to the rules of grammar and according to [its] common and approved usage."[14] We have endorsed a "broad, inclusive" view of what constitutes health-related expenses for purposes of child support.[15]

Because the child support order and Rule 90.3 both clarify "health care expenses" using an enumerated list—medical, dental, vision, and mental health counseling—there is a preliminary question of whether that list is exclusive. It is not. We interpret enumerated lists beginning with "including" or "includes" to be non-exclusive, as if the word were "followed by the phrase 'but not limited to.'"[16] Our case law has extended the same logic to "include" and "included."[17] Thus, because the child support order's list begins with "including" and 90.3's list begins with "include,"[18] these lists are illustrative, not exclusive. Accordingly, we address whether nutritional supplements are a health care expense, and do not attempt to determine whether supplements are medical, dental, vision, or mental health counseling expenses.

---

12. The relevant portion of the order states:
 Uncovered Health Care Expenses (including medical, dental, vision and mental health counseling expenses). Civil Rule 90.3(d)(2) and (f)(5).
 The cost of the child(ren)'s reasonable health care expenses not covered by insurance must be paid as follows, unless the expenses exceed $5,000 in a calendar year:
 ☒ Obligor will pay half and obligee will pay half.

13. The relevant portions of Civil Rule 90.3 provide:
 (d)(2): *Uncovered Health Care Expenses.* The court shall allocate equally between the parties the cost of reasonable health care expenses not covered by insurance unless the court orders otherwise for good cause.
 . . . .
 (f)(5): *Health Care Expenses.* Health care expenses include medical, dental, vision, and mental health counseling expenses.
 (Emphasis in original).

14. AS 01.10.040(a); *see also Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 904 (Alaska 1987).

15. *Cedergreen v. Cedergreen,* 811 P.2d 784, 787–89 (Alaska 1991).

16. AS 01.10.040(b). "When the words 'includes' or 'including' are used in a law, they shall be construed as though followed by the phrase 'but not limited to.'" *Id.*

17. *Thoeni v. Consumer Elec. Servs.,* 151 P.3d 1249, 1258 n. 41 (Alaska 2007) (citing treatise on statutory interpretation and prior cases to demonstrate that lists beginning with "include," "includes," or "included" are non-exclusive).

18. Alaska R. Civ. P. 90.3(f)(5).

As noted above, we have interpreted health care expenses broadly in the child support context.[19] In *Cedergreen v. Cedergreen*,[20] before Rule 90.3 addressed health care expenses,[21] we upheld a superior court's "broad, inclusive" interpretation of the contract term "medical and dental expenses."[22] We ultimately concluded that counseling, travel expenses, contact lenses, and braces were all medical and dental expenses.[23] However, we have never addressed the precise question of whether nutritional supplements qualify as health care expenses for the purposes of child support.

To the extent cases from other jurisdictions are relevant, they suggest that supplements may be a health expense if they are subject to professional oversight or if they produce demonstrated health benefits. Addressing a workers' compensation claim, a Florida appellate court concluded that nutritional supplements were a reimbursable medical expense when they were taken on the advice of a doctor and noticeably beneficial, despite the health care plan's exclusion of "vitamins."[24] In a bankruptcy case from Vermont, the federal court granted an allowance for vitamins where the debtor testified they had "been a sound, prophylactic measure for maintaining the Debtor's health."[25] A Mississippi court calculating the custodial parent's expenses in order to determine child support made a line item calculation for "medical, dental, drugs, and vitamins."[26] And in a divorce decree a Connecticut court took notice of a wife's preference for "vitamins and supplements rather than prescribed medication" when awarding child support and alimony—although the degree to which

the preference influenced the award is not stated.[27]

Similarly, this case involves supplements purchased directly from the clinics treating the autistic child and the charges appear on invoices from the clinics. Some of the invoices for supplements also include charges for appointments. The invoices show the child as a patient. Those invoices from Natural Health Center list a naturopathic doctor, Adam Grove. The invoices, although not listing a doctor, include charges for appointments in addition to supplements. Carol Jean's affidavit states that the charges on the invoices were "medically necessary . . . as a result of [the child's] [a]utism." Accordingly, the present case contains many of the factors relied on by other courts to conclude that the cost of supplements is a health care expense.

Consistent with our broad interpretation of health expenses for child support,[28] and other courts' inclusion of nutritional supplements in health care expenses, it was not erroneous for the superior court to consider nutritional supplements to be a health care expense, particularly when the supplements are recommended by, and purchased from, a health care practice.

Matthew's argument that paying for supplements is part of the custodial parent's responsibility for nutrition, and so should be paid for from regular child support payments, is unpersuasive. There is no indication that these supplements are needed because the child is not being fed properly. Rather, the evidence shows that the supplements were used to treat a medical problem. The bills in question show the expenses were incurred at clinics and include items such as

---

19. *Cedergreen*, 811 P.2d at 787–89.

20. 811 P.2d 784.

21. The provisions relevant to this case are 90.3(d)(2) and (f)(5), which were added as 90.3(d)(2) and (f)(4) in 1995. *See* Alaska Supreme Court Order No. 1192 (March 10, 1995) (effective July 15, 1995).

22. *Cedergreen*, 811 P.2d at 787.

23. *Id.*

24. *Tiznado v. Orlando Reg'l Healthcare Sys.*, 773 So.2d 584, 586 (Fla.App.2000). The case turned

on whether the supplements were "medically necessary," as the term is used in the Florida workers' compensation statute. *Id.*

25. *In re Edwards*, No. 03–10018, 2004 WL 316418, at *8 (Bkrtcy.D.Vt.2004).

26. *Creekmore v. Creekmore*, 651 So.2d 513, 519 (Miss.1995).

27. *Haracsy v. Haracsy*, No. FA064005934, 2008 WL 642633, at *2 (Conn.Super.Feb.19, 2008).

28. *See Cedergreen v. Cedergreen*, 811 P.2d 784, 787–89 (Alaska 1991).

evening primrose oil, zinc citrate, and methyl B12. In other words, the charges do *not* appear to be for routine, daily multi-vitamins, as one might purchase at the grocery store to supplement nutrition.

Matthew's other points about diet and nutrition are similarly unpersuasive. First, he defines "supplement" as "something that completes or makes an addition." He is correct that nutritional supplements generally enhance nutrition, but that does not show that they are part of a normal diet that Carol Jean should be providing. Second, even if regular child support is meant to cover everyday nutrition and dietary needs, Matthew does not show that regular support is also meant to cover *special* diets, or that special diets are not medical expenses. Third, he seems to mistake the diet his child eats with the nutritional supplements his child takes. He points out that a medical study found no difference in autistic children who avoided gluten and casein, and those who did not. That evidence might be relevant were the mother billing the father for grocery items such as gluten-free bread, but here there has been no dispute over such food expenses nor any claims that the child's special diet necessitates supplements.[29] Indeed, Matthew states that there is no evidence that the "nutritional supplements (vitamins) [are needed] because of this diet."

### 2. The nutritional supplements were reasonable.

■ Matthew's argument focuses on whether nutritional supplements are health care expenses or nutritional expenses, and he does not state that if the expenses are health care expenses, they are unreasonable. However, he makes three additional assertions that we believe go to reasonableness. Because health care expenses must be reasonable according to the child support order and Rule 90.3,[30] we address these assertions.

First, we are not troubled by the fact that the supplements were recommended but not required. There is no requirement that health care expenses be prescribed or required by a doctor in order to be reimbursable. It is sufficient that nutritional supplements were professionally recommended for the child's autism.

Second, Matthew's argument that Carol Jean did not buy the most affordable supplements on the market is likewise unpersuasive. As the superior court noted, because Carol Jean pays half of the health care expenses and lives on a limited budget, there are appropriate incentives for her to spend wisely. Further, that items are available less expensively online does not undercut the reasonableness of purchasing items directly from a clinic. Concerns such as convenience, quality, and expediency are relevant. Matthew has not demonstrated per se unreasonableness by showing that items are available more cheaply online, particularly without any discussion of whether the items are comparable in quality or potency.

Finally, Matthew asserts that the superior court's decision was based on its own beliefs, and not representative of the medical evidence presented. Matthew points to a medical study showing that special diets for autistic children are ineffective. But, as noted above, a special diet is not the same as supplements, so it is not clear that this evidence is relevant to Matthew's appeal of nutritional supplement charges. Because the nutritional supplements were professionally recommended, and because there is no expert testimony suggesting that the health care providers have followed an unreasonable course of treatment for the child in this case, the superior court did not err in declining to "second-guess the healthcare decisions made by Ms. Millette."

In conclusion, we affirm the superior court's decision, and hold that nutritional supplements may constitute a reasonable health care expense under the parties' child support order and Civil Rule 90.3(d)(2), particularly where the supplements are taken

---

**29.** Carol Jean stated, in an affidavit filed with the superior court, that supplements and a special diet are required due to the child's medical condition, but does not attribute the need for supplements to the diet.

**30.** Alaska R. Civ. P. 90.3(d)(2).

for a specific medical condition, at the recommendation of a health care provider, and purchased through a clinic.

### B. The Superior Court Did Not Err In Including Shipping And Handling Costs In Health Care Expenses.

■ Matthew's second point on appeal contests the superior court's treatment of shipping and handling costs (totaling less than $50) as health care expenses. Matthew cites no authority to support his claim, and we do not find the claim to be compelling.

Each parent must pay half of the child's health care expenses not covered by insurance.[31] The interpretation of "health care expense" is detailed above in section IV.A. In light of our generally broad interpretation of child support expenses,[32] we conclude that these shipping and handling charges are likewise appropriately considered health care expenses. The shipping costs represent a small share of the total bills, about 2.5%. Moreover, shipping costs are not particularly troublesome: Presumably, when one buys from a pharmacy, the shipping is inherently a part of the listed price. It would be odd to allow stores to include shipping in their price in this manner, but to disallow it when detailed as a separate charge, as was done here. And, looking forward, online pharmacies are becoming more common, and it is therefore foreseeable that itemized shipping and handling will become more common as a part of pharmaceutical expenses than in the past.[33]

In conclusion, having determined that the nutritional supplements are a reasonable health care expense, we hold that their shipping and handling is a reasonable health care expense.

### C. The Superior Court Did Not Abuse Its Discretion In Ordering Matthew To Reimburse Carol Jean $400 For Health Care Expenses Although He Had Already Paid That Amount To The Clinic.

■ Matthew claims that the superior court abused its discretion when it ordered him to reimburse Carol Jean $400 for the cost of the child's health care at CARE,[34] because he already paid that amount directly to CARE.

■ We review child support orders for an abuse of discretion, reversing only "if based on the record as a whole this court is left with a definite and firm conviction that a mistake has been made."[35] We discern no such abuse of discretion.

Matthew and Carol Jean's child support order requires reimbursement *to the parent* who paid the health care expenses:

A party shall reimburse the other party for his or her share of the uncovered expenses within 30 days after receiving the health care bill, proof of payment and, if applicable, a health insurance statement showing what part of the cost is uncovered. The bill and other materials should be sent within a reasonable time.

The child support order makes no provision for directly paying the health care provider.[36] Thus, to the extent Matthew asserts that he is required to reimburse only the care provider, and not Carol Jean, he violates the express terms of the court-ordered child sup-

**31.** Alaska R. Civ. P. 90.3(d)(2), (f)(5).

**32.** *See, e.g., Cedergreen*, 811 P.2d at 787–88 (approving expenses such as airfare, car rental, and hotels).

**33.** Indeed, the online drug source Matthew recommends Carol Jean use, because it is cheaper, is a mail order source that also charges shipping. *See* Puritan's Pride, Help Center Shipping Policy, http://www.puritan.com/house/helpcenter.asp# ship (last visited September 10, 2010).

**34.** The full amount of CARE bills was $1,246.23. Matthew claims that $446.50 of that sum was for supplements, and therefore appears to be reimbursing his half of the remaining amount, roughly $800.

**35.** *Rosen v. Rosen*, 167 P.3d 692, 695 (Alaska 2007) (internal citation omitted).

**36.** Similarly, Rule 90.3(d)(2) requires reimbursement to the party who paid. The comment to that rule allows prepayment to the provider when required by the provider—but never considers post-payment to the provider, let alone when the other party has already paid the bill. *See* Alaska R. Civ. P. 90.3 Commentary VII.B.

port, which requires him to reimburse the parent who paid.

Indeed, Matthew's payment to CARE could not even compensate Carol Jean for the money she had already expended, as it came after Carol Jean paid the bills in full. And Carol Jean's payment could not be refunded, because, according to a letter from CARE, Matthew insisted that his payment was for future services, and should not be applied to past treatment. This leaves Carol Jean without reimbursement for the treatment at CARE before October 2006, for which she paid in full.

Finally, because the child is no longer treated at CARE, Matthew's $400 payment to that entity is of no value to Carol Jean.

Accordingly, the superior court did not abuse its discretion in ordering Matthew to reimburse Carol Jean for one half of her payments to CARE, despite Matthew's $400 payment to the clinic for future treatment.

### D. The Superior Court Did Not Abuse Its Discretion In Ordering Matthew To Pay Old Health Care Bills Incurred Before The Child Support Order Went Into Effect.

▪▪ Matthew claims that he should not be responsible for certain bills because they were incurred before the child support order went into effect, and because the bills were not timely presented to Matthew.

Because the guidelines of Rule 90.3 govern the apportioning of health care expenses when no child support order is in effect, and because the superior court's apportioning of expenses was within those guidelines, we conclude that the court did not abuse its discretion. Further, given the circumstances

of this case, any alleged delay in presenting the bills to Matthew was not unreasonable.

### 1. It was not an abuse of discretion to apportion bills incurred before the child support order went into effect.

Matthew's main contention is that it was improper for the superior court to order him to pay half of the medical bills from Natural Health Center because those bills were incurred before the child support order went into effect. The bills from Natural Health Center were incurred between March and August 2005. Child support was ordered on October 4, 2005.

▪▪ Although a child support order may not apply retroactively to old bills,[37] a court may still consider and apportion those old health care bills.[38] In that case, the court apportions old bills according to the standards of Rule 90.3, not the child support order.[39]

Here, since the child support order was not yet in effect when the five bills from Natural Health Center were incurred, Rule 90.3 governs the division of those bills. Rule 90.3, like the Millettes' child support order in this case, requires each parent to pay half of the child's reasonable health care expenses.[40] Accordingly, the superior court's judgment requiring Matthew to pay half was consistent with both Rule 90.3 guidelines and the child support order, and not an abuse of discretion.

### 2. Although the bills may not have been presented to Matthew immediately, the superior court did not abuse its discretion in ordering Matthew to pay half.

Matthew asserts that he had not received the bills from Natural Health Center until

**37.** *Millette v. Millette,* 177 P.3d 258, 266 (Alaska 2008).

**38.** *See Vachon v. Pugliese,* 931 P.2d 371, 381–82 (Alaska 1996) (holding that while Rule 90.3 does not expressly apply to payments made before order is in place, court may apply Rule 90.3's methodology).

**39.** *Id.* This treatment does not violate Rule 90.3(h)(2), prohibiting retroactive modification, because no order was yet in effect, so there was nothing to modify. *Id.*

**40.** Compare Rule 90.3(d)(2) ("The court shall allocate equally between the parties the cost of reasonable health care expenses not covered by insurance unless the court orders otherwise for good cause.") with the Millettes' child support order ("The cost of the child(ren)'s reasonable health care expenses not covered by insurance must be paid as follows ... ☒ Obligor will pay half and obligee will pay half.").

Carol Jean filed the motion in superior court, over three years after the bills were incurred.

As discussed above, Rule 90.3 governs the division of the bills from Natural Health Center. Unlike the Millettes' child support order, that rule does not contain an express timeliness provision regarding medical bills.

In the present case, faced with conflicting testimony regarding when the bills were presented, and a record of ineffective communication between the parties, the superior court ordered Matthew to pay half of the bills, regardless of when the bills were presented to him. This is reasonable and fair since the bills were undisputably incurred, and we are not left with a definite and firm conviction that a mistake has been made.[41] Accordingly, we conclude that the superior court did not abuse its discretion.

## V. CONCLUSION

Because nutritional supplements can be a reasonable health care expense—particularly when purchased from, and recommended by, a clinic treating a medical problem—we affirm the superior court's inclusion of supplements, and their shipping and handling, in the judgment. Because the father's payment of certain health care expenses to the clinic came after the mother had already paid, and because he did not reimburse her, we affirm the superior court's judgment against the father for those expenses. Finally, because the father owes half of the child's health care expenses under the guidelines set out by Rule 90.3, we conclude that it was not an abuse of discretion for the superior court to order the father to pay half of the bills incurred before the child support order became effective. Accordingly, we AFFIRM the superior court's judgment in all respects.

EASTAUGH and CHRISTEN, Justices, not participating.

---

**41.** *See Rosen v. Rosen,* 167 P.3d 692, 695 (Alaska 2007).