James A. CRANE, Appellant,

v.

Logan P. CRANE, Appellee.

Nos. S-8538, 5173.

Supreme Court of Alaska.

Sept. 10, 1999.

Stephen F. McKee, Anchorage, for Appellant.

Robert C. Erwin, Law Offices of Robert C. Erwin, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. *INTRODUCTION*

This appeal arises from the incorporation of a custody and support agreement into a divorce decree. The agreement provided for joint legal and physical custody of the couple's two minor children. The father moved to set aside the agreement, which the court denied. On appeal, the father contends the court erred by failing to conduct a "best interests of the children" analysis and by failing to make specific findings on this issue. In·addition, the father claims that the superior court erroneously found that he voluntarily entered into the agreement. Because we conclude that the superior court did not err in finding that the agreement met the best interests of the children and in finding that the father voluntarily entered into the agreement, we affirm.

### II. *FACTS AND PROCEEDINGS*

James Crane and Dr. Logan Porter Crane married in June 1990 and moved to Kodiak the same year. They have two children, M.A.C., born August 1992, and E.H.C., born

July 1994. The Cranes' marriage had numerous problems, and the couple separated in January 1994 for the third and last time. Mr. Crane filed for divorce in October of that year and sought joint legal and shared physical custody of both children. Dr. Crane counterclaimed and sought sole legal and physical custody of the children.

Following extensive motion practice and evaluations by a custody investigator and psychologist, a trial was set for December 1, 1997. A mandatory settlement conference was held November 24, 1997. The superior court conducted the conference, which lasted for three days, and it culminated in an agreement providing for joint legal and physical custody of the children.[1] The agreement was signed and acknowledged in open court during a hearing on November 26. The court ordered the agreement incorporated into the divorce decree, which it simultaneously granted.

Mr. Crane moved to vacate the child custody agreement and order under Alaska Rule of Civil Procedure 60(b) in January 1998. He asserted that he had entered into the agreement based upon the advice of his attorney, who had been medically determined to be disabled from the practice of law a week before the conference. Mr. Crane stated that he was not informed of this fact until early December.[2] Mr. Crane further alleged that his counsel's representations had compelled him to accept a settlement which was not in the best interests of the children; his acceptance was therefore not voluntary. Specifically, Mr. Crane asserted that his attorney erroneously advised him that because he had contact with the custody investigator prior to the settlement conference, the trial court would not allow the custody investigator to testify. As a result, he would lose his custody rights if he did not agree to a settlement.[3] The court denied Mr. Crane's motion.

Mr. Crane then objected to Dr. Crane's proposed partial findings of fact and conclusions of law. Specifically, Mr. Crane objected to a paragraph that stated that the child custody and support agreement was in the best interests of the minor children, was entered into voluntarily without duress, and was entered into with the assistance of counsel. On February 24, the court entered the proposed partial findings of fact and conclusions of law, including the disputed paragraph, as well as a divorce decree. This appeal followed.

## III. DISCUSSION

Mr. Crane makes three main arguments. First, he asserts that the trial court abused its discretion by accepting the parties' agreement without conducting an inquiry into the best interests of the children or making the necessary findings. Alternatively, he argues that the court's conclusory finding that the custody agreement was in the best interests of the children was not supported by the evidence. Finally, Mr. Crane contends that the trial court erred in finding that he entered into the custody support agreement voluntarily and with the assistance of counsel. Dr. Crane responds that a custody settlement need not meet the same "best interests of the children" standard as required in contested custody decisions because it contractually binds the parties, and the superior

1. Under the terms of the agreement, the children would spend four days a week with Dr. Crane and three days a week with Mr. Crane until August 15, 2000, when the children are six and seven years old. (This is similar to the interim custody order.) From 2000 to 2006, custody would alternate weekly; for 2006 to 2007 custody would alternate every two weeks; thereafter custody would alternate every four weeks, with weekend visitation for the non-custodial parent on the first and third weekend of each four-week period.

2. The trial on property division occurred on December 2 and 3, 1997. On December 9, Mr.

Crane replaced his counsel and filed a motion for a new trial based on his previous attorney's diagnosis of fibromyalgia. Mr. Crane also moved for an evidentiary hearing. On December 18, the court denied Mr. Crane's motion for a new trial, as well as his motion to reconsider the denial, and found the motion for an evidentiary hearing to be moot.

3. Mr. Crane affined that his counsel informed him that the court was not going to allow the custody investigator to testify, and that his custody case was "out the window" and "completely compromised."

court met this lower "contractual principles" standard.

We turn first to the basic requirements of child custody agreements. Next we consider the validity of the agreement in this case in light of the contract defenses raised against it. Finally, we discuss the sufficiency of the trial court's findings concerning the best interests of the children.

### A. *A Child Custody Agreement Must Satisfy General Contract Principles.*

▋ Courts will treat settlement agreements as contracts provided they meet minimal contractual requirements.[4] "The formation of a valid contract requires an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound."[5] When a stipulation is admitted by both parties or their attorneys in open court and there is no dispute as to the material terms of the settlement, the stipulation is enforceable between the parties absent fraud, duress, or concealment of other facts showing the agreement was not made voluntarily and with full understanding.[6] However, when the subject matter of the agreement is child custody, the agreement must also meet the best interests of the children.[7]

▋ The Cranes reached an agreement with definite terms after three days of settlement negotiations. They said, in regard to that agreement:

> Each party acknowledges that although he or she would prefer sole legal and physical custody, it is in the best interest of the children to enter this agreement voluntarily and he or she has done so without duress or undue influence. Each believes that under the applicable law and the facts and circumstances of this case, this agreement is in the best interests of the children.[8]

They placed the terms of the agreement on the record at a hearing. Because both parties accepted this agreement with definite terms in open court, it is enforceable between the parties absent a contractual defense and as long as it meets the best interests of the children.

### B. *The Superior Court Did Not Err in Finding that Mr. Crane Entered the Custody and Support Agreement Voluntarily and with the Assistance of Counsel.*

▋ Mr. Crane claims he entered into the agreement under duress and coercion, without the effective assistance of counsel, and that the superior court's finding that Mr. Crane entered into the agreement voluntarily and with the assistance of counsel is not supported by the record and is clearly erroneous.[9] His basis for this contention is twofold. First, Mr. Crane contends that he did not orally confirm that he entered into the agreement "voluntarily" at the hearing to put the settlement on the record, and subsequently informed the court he had not entered into it voluntarily in his motion to vacate the agreement. Second, he argues he was under duress and coerced into agreeing to the settlement. This is so, he argues, because he was incorrectly advised—by an attorney who had been recently diagnosed as disabled from the practice of law—that if he did not accept the settlement he would likely lose custody. These arguments lack merit.

---

4. *See Gaston v. Gaston,* 954 P.2d 572, 574 (Alaska 1998); *Davis v. Dykman,* 938 P.2d 1002, 1006 (Alaska 1997).

5. *Davis,* 938 P.2d at 1006.

6. *See Murphy v. Murphy,* 812 P.2d 960, 965 (Alaska 1991) (citing *Kerslake v. Kerslake,* 609 P.2d 559, 560 (Alaska 1980); *Interior Credit Bureau, Inc. v. Bussing,* 559 P.2d 104, 106–07 (Alaska 1977)).

7. *See McClain v. McClain,* 716 P.2d 381, 385 (Alaska 1986).

8. Child Custody and Support Agreement, III.B.

9. The superior court's factual findings are reviewed under the clearly erroneous standard. *See* Alaska R. Civ. P. 52(a); *McGee v. McGee,* 974 P.2d 983, 987 (Alaska 1999). The superior court's approval of a settlement stipulation is reviewed under the clear abuse of discretion standard. *See Barber v. Barber,* 837 P.2d 714, 716 n. 2 (Alaska 1992) (citations omitted).

■ First, Mr. Crane did not need to explicitly state that he entered into the agreement "voluntarily" for the court to find he did so. Mr. Crane had the assistance of two attorneys during the negotiations and it appears that he understood what he agreed to. The following exchange occurred:

Q. Mr. Crane, you have in front of you or I have placed in front of you a child custody and support agreement. Have you read through that agreement carefully?

A. Yes.

Q. And have some changes been made at your suggestion?

A. Yes.

Q. And although I understand that this is not entirely what you would've preferred, do you understand the import of all the contents of this agreement?

A. Yes.

Q. And are you willing to abide by the contents of this agreement?

A. Yes.

Q. And have you signed this yourself on the copy before the court?

A. Yes.

This exchange reveals that Mr. Crane entered into the agreement knowingly and willingly. Therefore, his failure to explicitly confirm that his consent was voluntary does not render the agreement involuntary. Likewise, that he had changed his mind by January (when he argued that his November action was not taken voluntarily) is not relevant to his state of mind in November, when he agreed to shared custody.

■ Similarly, Mr. Crane's claim that he agreed to the settlement under duress and coercion as a result of bad advice from his "incapacitated" counsel lacks merit. At the settlement conference Mr. Crane was represented by two lawyers, Elizabeth "Pat" Kennedy and Michael Gershel. At some time in the past, Ms. Kennedy had been diagnosed with fibromyalgia. On November 17, 1997, she was medically determined to be disabled from the practice of law. There is dispute as to the extent of Mr. Crane's knowledge of

Ms. Kennedy's illness prior to the conference. Mr. Crane contends that although he had been aware of Ms. Kennedy's health problems during the two years preceding the final custody negotiations, he did not realize that she was "totally and permanently disabled from the practice of law." Ms. Kennedy characterized her disability as "unable to continue practicing as a full time lawyer." In her affidavit she stated that Mr. Crane was aware of her diagnosis of fibromyalgia and some of the problems associated with it, and that he approved of the hiring of Mr. Gershel as "second chair" for the trial.

As a preliminary note, according to Ms. Kennedy, her fibromyalgia is episodic and Mr. Crane offered no evidence Ms. Kennedy was suffering an attack at the time of negotiations. She affined that she was not. In fact, while Ms. Kennedy had been seeking a diagnosis and treatment for periodic fatigue, depression, aches, and other flu-like symptoms for several years prior to the settlement conference, the record indicates that she worked aggressively and competently on behalf of Mr. Crane.

In addition, Mr. Crane had the benefit of another attorney's assistance in this case. While Mr. Crane contends that Mr. Gershel was brought in for motion practice only, and that he relied solely on Ms. Kennedy's advice and counsel with regard to custody, both the specific terms of the settlement and the record of proceedings belie this claim. As to the settlement agreement, the parties stated: "Each party acknowledges that he or she has consulted with *both* of his or her attorneys regarding the effects of this agreement, consents to the same, and understands the consequences thereof."[10] Significantly, both Ms. Kennedy and Mr. Gershel signed the agreement as counsel for Mr. Crane.

As to the record of proceedings, it indicates Mr. Gershel was present during the negotiations and was well aware of child custody and support issues. He drafted motions and supporting memoranda on Mr. Crane's behalf regarding child support, Dr. Crane's alleged interference with his visitation, opposition to Dr. Crane's motion to sanction the custody investigator, and to exclude testimo-

10. Child Custody and Support Agreement, III.B. (emphasis added).

ny from Dr. Smith and another psychologist regarding the best interests of the children. Mr. Gershel was well-versed in the facts and legal arguments regarding custody, and was present throughout the negotiations. Therefore, assuming for the sake of argument that Ms. Kennedy was incapacitated, since Mr. Gershel was available and competent to give Mr. Crane legal advice, Mr. Crane could not have suffered from inadequate counsel.

 Finally, Mr. Crane argues that as a result of Ms. Kennedy's advice he entered into the agreement under duress and coercion. However, the fear of losing custody of one's children in a custody dispute does not, standing alone, constitute duress. Duress generally requires a threat that arouses such fear as to preclude a party from exercising free will and judgment, or "it must be such as would induce assent on the part of a brave person or a person of ordinary firmness."[11] Coercion, though not synonymous with duress, is similar and implies compulsion or constraint.[12] As the Illinois Court of Appeals aptly noted, a party's fear of losing custody of his or her children no doubt causes anxiety; however, this will not be recognized "as a factor impairing [one's] . . . ability to exercise [one's] . . . free will and make a meaningful choice when the record reflects that [the party] agreed to negotiations, took part in the negotiations, and then presented the substance of these negotiations, under oath, to the trial court."[13]

 In sum, Mr. Crane appears to have actively participated in the settlement conference with the assistance of two attorneys. He helped craft its terms, he knew its contents, and he voluntarily agreed to abide by it under oath in open court. Mr. Crane has not shown that the superior court's finding was clearly erroneous. Accordingly, we hold that the custody and support agreement is binding between the parties.[14]

C. *The Superior Court Did Not Err in Finding that the Custody Agreement Met the Best Interests of the Children.*

 In making any custody determination—whether following a contested trial or upon the parties' agreement—the superior court must base its decision on the best interests of the child.[15] In this case, the superior court did make findings of fact which addressed the best interests of the children. At the November 26, 1997 hearing to put the Child Custody and Support Agreement on the record, the court announced its finding that:

The child custody, support and visitation agreement between the parties is in the

---

**11.** 25 Am.Jur.2d *Duress and Undue Influence* § 1 (1996).

**12.** *See Black's Law Dictionary* 258 (6th ed.1990).

**13.** *Marriage of Steadman,* 283 Ill.App.3d 703, 219 Ill.Dec. 258, 670 N.E.2d 1146, 1151–52 (1996). While the negotiations in the case at bar were mandatory, and Mr. Crane only indicated he knew the agreement's terms rather than reciting their substance, the rationale of *Steadman* still applies here. Mr. Crane participated in the settlement negotiations and knew failure to reach agreement would result in trial, as occurred with the property settlement. His active participation in the negotiations and review of its terms, as evinced by his initials at the bottom of each page, strongly indicate he knew the settlement's terms.

**14.** In his reply brief, for the first time, Mr. Crane raises a separate argument concerning voluntariness. He argues that the trial court improperly conducted the mandatory settlement conference because the same judge would preside over trial if the conference were unsuccessful, and that his assent was therefore coerced. Mr. Crane concedes that "the issue of whether judges designated to try cases should be judges who also conduct mandatory settlement negotiations is not directly before [this court] at this time." The concession is well taken, as we will not consider issues raised for the first time in a reply brief. *See* Alaska R.App. P. 212(c)(3); *McGee v. McGee* 974 P.2d 983, 989 (Alaska 1999); *Petersen v. Mutual Life Ins. Co.,* 803 P.2d 406, 411 n. 8 (Alaska 1990) (argument waived because appellant failed to "advance any legal argument as to why the court erred" in main brief). As to coercion, we find no objective evidence in the record to support the claim. We express no opinion as to the propriety of mandatory settlement conferences presided over by the judge who will conduct the trial if the conference is unsuccessful.

**15.** *See Hakas v. Bergenthal,* 843 P.2d 642, 644 (Alaska 1992) (best interests inquiry is essential component of custody determinations); *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1190 (Alaska 1987) (court must review parties' agreement under best interests standard) (citing *McClain v. McClain,* 716 P.2d 381, 385–86 (Alaska 1986)).

best interests of the children and is incorporated into the divorce decree as if fully set forth.

The court's written findings and conclusions reflected its earlier statements on the record. The court found:

> [T]he parties, with the assistance of counsel, have entered into a Child Custody & Support Agreement which the parties aver is in the best interests of the two minor children. . . .

> [T]he court is familiar with the Child Custody & Support Agreement and the legal and factual issues underlying same and finds this agreement to be in the best interests of the minor children, and fair and equitable to the parties.[16]

The court entered a matching conclusion of law, and incorporated this statement into the Decree of Divorce. In the particular circumstances of this case, these findings and conclusions were sufficient. ·

Mr. Crane argues that the superior court's findings were insufficient because the court did not address individually each of the statutory factors.[17] This position ignores several critical facts: that Mr. Crane voluntarily entered into the child custody agreement; that

he did so with the benefit of counsel; that the agreement was approved by a superior court judge who had just conducted a settlement conference on custody issues for three days; and that the legal custodial status chosen by the parties, joint legal custody, has been recognized by the Alaska Legislature as the preferred custodial status when marriages end.[18] No Alaska case supports the result urged by Mr. Crane, and we decline to order it.

■ In making a best interests finding, the trial court may properly rely on the entire record before it. This includes the case file, settlement proceedings occurring before the court, and the parties' and counsels' representations when the agreement is put on the record.

■ A trial court properly conducts a less searching best interests analysis in approving a custody settlement than in making a custody determination in a contested action.[19] In 1982, the state legislature, while amending the child custody statutes, specified the legislature's intent that "it is in the best interests of a child to encourage parents to implement their own child care agree-

---

16. Partial Findings of Fact and Conclusions of Law, Feb. 24, 1998.

17. AS 25.24.150(c) provides:

> (c) The court shall determine custody in accordance with the best interests of the child under AS 25.20.060–25.20.130. In determining the best interests of the child the court shall consider
> (1) the physical, emotional, mental, religious, and social needs of the child;
> (2) the capability and desire of each parent to meet these needs;
> (3) the child's preference if the child is of sufficient age and capacity to form a preference;
> (4) the love and affection existing between the child and each parent;
> (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
> (6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;
> (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

> (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
> (9) other factors that the court considers pertinent.

18. See An Act Relating to Child Custody, ch. 88, § 1(a), SLA 1982:

> The legislature finds that it is generally desirable to assure a minor child frequent and continuing contact with both parents after the parents have separated or dissolved their marriage and that it is in the public interest to encourage to share the rights and responsibilities of child rearing. While actual physical custody may not be practical or appropriate in all cases, it is the intent of the legislature that both parents have the opportunity to guide and nurture their child and to meet the needs of the child on an equal footing beyond the considerations of support or actual custody.

As we held in Bell v. Bell, 794 P.2d 97, 99 (Alaska 1990), legislative intent "favors joint legal custody, regardless of the physical custody arrangement."

19. See Gaston v. Gaston, 954 P.2d 572, 573 (Alaska 1998).

ments outside of the court setting." [20] In addition, a custody agreement that is voluntarily reached may evince each parent's desire and ability to "allow an open and loving ... relationship between the child and other parent," [21] one of the statutory factors the court must consider in awarding custody. The fact of settlement is therefore pertinent because it demonstrates that "cooperation between the parents is possible," [22] which is "essential if joint custody is to be in the best interests of the child." [23] Finally, the dynamics of settlement are such that the level of judicial scrutiny advocated (in hindsight) by Mr. Crane would likely have a counterproductive effect: it would discourage settlement and defeat settlement efforts.

This last factor is of great concern in a system where litigation is both expensive and, in the context of child custody disputes, emotionally debilitating. Disputes over custody can have far-reaching effects, further harming and in some instances completely poisoning the relationship between the parents and thereby negatively affecting their children well into adulthood. The legislature recognized these effects when it found that it is in the best interests of children to have their own parents fashion custody agreements rather than have courts impose custodial regimes upon them.

■■■■■ We do not suggest that there is never recourse for a parent who seeks to withdraw from a custody agreement. But a parent's mere change of mind is insufficient. Rather, if circumstances have changed from the time the agreement was entered,[24] or the assumptions underlying the agreement have proven unfounded,[25] or the agreement was procured by fraud or duress,[26] or in similar circumstances, a parent may move to withdraw. In such a case, the trial court would have the duty to inquire and to make specific findings in support of its resolution of the matter. By the same token, a trial court presented with an agreement which raises questions in the court's mind as to whether the agreement serves the best interests of the children [27] has the discretion to inquire further before making a finding that the agreement is in the best interests of the children. But none of those circumstances applies here. In the circumstances of this case, the trial court's findings were sufficient.

## IV. CONCLUSION

Because the Cranes' child custody agreement met the requirements of a contract, because Mr. Crane entered into it voluntarily and with the assistance of counsel, and because the superior court did not err in finding that the agreement served the best interests of the Crane children, we AFFIRM.

---

20. Ch. 88, § 1(b), SLA 1982.

21. AS 25.24.150(c)(6).

22. *McClain v. McClain*, 716 P.2d 381, 385 (Alaska 1986).

23. *Id.* at 386; *see also Smith v. Smith*, 673 P.2d 282, 283 (Alaska 1983).

24. *See Garding v. Garding*, 767 P.2d 183, 185 (Alaska 1989) (changed circumstances doctrine applies to modifications of stipulated child custody arrangements in effect for a significant period of time).

25. *See Schofield v. Schofield*, 777 P.2d 197, 202 (Alaska 1989).

26. *See Dewey v. Dewey*, 886 P.2d 623, 625–26 (Alaska 1994).

27. A trial judge might well inquire further in any of a number of "red flag" situations. One group of such cases includes the "heightened scrutiny" cases already recognized by the legislature in dissolutions where the statutory factors are applicable, that is, where one party is represented by counsel and the other is not, or where there has been a history of domestic violence. *See* AS 25.24.220(h). Another group would include situations where the agreement calls for unusual and unexplained provisions, for example, limiting the children in their telephone contact with a noncustodial parent, or prohibiting the children's access to counselors, or the like.