*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DANNY SHERRILL, | ) | |
| | ) | Supreme Court No. S-15844 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-14-02550 CI |
| v. | ) | |
| | ) | O P I N I O N |
| PAULITA SHERRILL, | ) | |
| | ) | No. 7102 – May 13, 2016 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas Blankenship, Judge.

Appearances: Danny Sherrill, pro se, Army Pacific, Appellant. Paulita M. Hallen, pro se, North Pole, Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.    INTRODUCTION

This appeal arises from superior court orders dividing marital property, granting child custody, and determining child support. The noncustodial, nonresident parent claims the superior court lacked jurisdiction, the orders are substantively incorrect, and the court appeared to be biased against him. We conclude that the record contains no evidence of bias and that the court did not err in entering the marital property and child

custody orders. The superior court properly exercised jurisdiction and entered orders settling marital property and granting custody that reflected the parties' agreements. But in calculating the father's child support obligation, the court assumed that Alaska Civil Rule 90.3 imposes an income ceiling of $110,000 — $10,000 below the statutory level. Because the father's income appears to exceed $120,000, this assumption likely rendered the support order too low. Accordingly we remand the support order for reconsideration.

## II.   FACTS AND PROCEEDINGS

Danny Sherrill and Paulita Hallen (formerly Paulita Sherrill) married in 2000 in Seoul, South Korea, and have one daughter. Before separating in 2011 they lived outside the United States. By June 2012 Paulita had moved to Alaska with their daughter, and in September 2014 Paulita filed for divorce. At the time Danny was living in Okinawa, Japan, where he was working as a temporary contractor at a U.S. military base; Danny participated in the proceedings by telephone. Both Danny and Paulita appeared pro se.

Two hearings were held that December. During those proceedings and in their briefing, Danny and Paulita agreed on most substantive matters. They agreed to settle the marital property division with a one-time payment of $35,000 from Danny to Paulita, which Danny agreed to pay by the end of the next month. They also agreed to share legal custody of their daughter and to give Paulita primary physical custody with liberal visitation for Danny. Each also noted that Danny had been providing about $1,600 per month in child support.

Danny, however, declined to fully document his income, claiming that the information was classified. To determine child support, which under Alaska Civil Rule 90.3 is based on the obligor's annual income, the superior court worked with the information it had and estimated Danny's annual income as $110,000. This figure, the court explained, reflected Rule 90.3's income ceiling; any income exceeding that amount

would not affect the calculation. Danny agreed that the $110,000 estimate was fair. But Paulita, through her interpreter,[1] questioned the court's determination, asserting that the court had not accounted for Danny's retirement income and that, if it had, Danny's income would exceed "[$]120,000, which is [the limit under] 90.3." The court did not address Paulita's concern.

Danny also expressed some concerns. He claimed that Paulita had taken their daughter to Alaska illegally and was making visitation difficult. And he requested permission "to submit documents . . . concerning [Paulita's] illegal departure . . . from [their] home in Guam and going to Alaska." The court stated that Danny was free to submit evidence, but it encouraged him to be thoughtful and to only submit documents if relevant to disputed issues. Danny acknowledged agreement with the information already before the court.

In January 2015 the court entered the final divorce decree, custody order, support order, and findings of fact and conclusions of law, which memorialized the $35,000 marital property settlement. As decided at the hearing, the court based the child support order on an annual income of $110,000 for a monthly obligation of $1,833.33.

After the December hearings Danny informed Paulita that he had already satisfied the $35,000 settlement and accordingly did not owe her any more money. When the January payment deadline passed without payment Paulita moved to enforce the order. Danny opposed her motion, claiming that he had already paid Paulita $48,650 "over a period of three years." He also filed a notice of appeal challenging Paulita's status to file a complaint and asserting that the court was biased against him. The superior court granted Paulita's motion and ordered Danny to pay the $35,000.

On appeal Danny asks us to vacate all orders except the divorce decree.

---

[1] During the second hearing, a court-provided interpreter assisted Paulita.

## III. STANDARDS OF REVIEW

We review jurisdiction issues de novo.[2]

A superior court's equitable division of marital property is reviewed for abuse of discretion.[3] "[W]e will not disturb [a division] unless the result is clearly unjust."[4]

In determining custody, a superior court enjoys "broad discretion . . . so long as the determination is in the child's best interests."[5] "We will not reverse a custody order unless the superior court abused its discretion or its controlling factual findings are clearly erroneous."[6] "The superior court abuses its discretion if it 'considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others.' "[7] "The clearly erroneous standard, as we apply it, means something more than merely showing it is more probable than not that the trial judge was mistaken. We must be convinced, in a definite and firm way, that a mistake has been committed."[8]

---

[2]     *Vanvelzor v. Vanvelzor*, 219 P.3d 184, 187 (Alaska 2009) (citing *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002)).

[3]     *Sandberg v. Sandberg*, 322 P.3d 879, 886 (Alaska 2014) (quoting *Williams v. Williams*, 252 P.3d 998, 1004 (Alaska 2011)).

[4]     *Id*. (quoting *Williams*, 252 P.3d at 1004).

[5]     *Nancy M. v. John M.*, 308 P.3d 1130, 1133 (Alaska 2013) (quoting *Stephanie F. v. George C.*, 270 P.3d 737, 745 (Alaska 2012)).

[6]     *Id.* (citing *Stephanie F.*, 270 P.3d at 745).

[7]     *Id.* (quoting *Stephanie F.*, 270 P.3d at 745).

[8]     *Sandberg*, 322 P.3d at 886 (quoting *Alaska Foods, Inc. v. Am. Mfrs. Mut.*
(continued...)

We review de novo child support issues that involve "a question of law such as interpreting a civil rule . . . and determining the correct method for calculating child support."[9]  Where a question of law is not involved, however, a superior court has "broad discretion in making child support determinations"; we review those decisions for abuse of discretion.[10]

Finally the question whether a court's conduct raises an appearance of impropriety is a question of law we review de novo.[11]

## IV. DISCUSSION

### A. The Superior Court Properly Exercised Jurisdiction.

Danny contends that the superior court lacked jurisdiction to enter the marital property, custody, and child support orders.  He claims that Paulita did not have the status necessary to initiate a complaint because she entered Alaska illegally, and he asserts that it is inappropriate for Alaska to compel him to act because he has never lived in the state and lacks connections to any U.S. state.

Jurisdiction in divorce proceedings depends on the nature of the claim.  To divide marital property of a nonresident, the trial court must have personal jurisdiction

---

[8]     (...continued)
*Ins. Co.*, 482 P.2d 842, 848 (Alaska 1971)).

[9]     *Wells v. Barile*, 358 P.3d 583, 587-88 (Alaska 2015) (quoting *Millette v. Millette*, 240 P.3d 1217, 1219 (Alaska 2010)).

[10]     *Id.* at 588 (quoting *Millette*, 240 P.3d at 1219).

[11]     *Heber v. Heber*, 330 P.3d 926, 934 (Alaska 2014) (citing *Griswold v. Homer City Council*, 310 P.3d 938, 941 (Alaska 2013)).

over the nonresident under Alaska's long-arm statute, AS 09.05.015, unless the defense is waived.[12] Under AS 09.05.015(a)(12), such claims may be heard when:

> (A) the parties resided in this state in a marital relationship for not less than six consecutive months within the six years preceding the commencement of the action;

> (B) the party asserting the personal claim has continued to reside in this state; and

> (C) the nonresident party receives notice as required by law.

These grounds are exclusive; they are not "in addition to any other grounds" including those at common law.[13] Thus when nothing in the record suggests that a couple "ever resided together in a marital relationship in Alaska," the court does not have jurisdiction to divide marital property unless the responding party waives the defense.[14]

Nothing in the record suggests that Danny and Paulita ever resided in Alaska as a married couple. We nonetheless conclude that jurisdiction exists because Danny waived the defense.[15] Though Danny expressed concern about Paulita's move to Alaska, he did not tie this concern to the court's authority to hear the action. Rather, as the superior court noted, it appeared the concern related to custody; his answer stated, for example: "[Paulita] took my daughter, illegally . . . . As a result, it has been hard for me to see my daughter due to the long distance between Okinawa and Alaska." Danny never argued that the superior court lacked jurisdiction and never mentioned concerns about his

---

[12] *Vanvelzor v. Vanvelzor*, 219 P.3d 184, 188-89 (Alaska 2009).

[13] *Id.* at 188 ("The only grounds for jurisdiction over personal claims in divorce and annulment actions are statutory.").

[14] *See id.* at 188-89.

[15] Though Paulita does not argue that Danny waived the defense, "we generally frame similar questions in terms of waiver"; we may address such issues sua sponte. *See id.* at 189.

lack of contacts with the state. Therefore, with respect to the property division, we find the defense waived.

The superior court also properly exercised its jurisdiction when it determined child custody. Subject matter jurisdiction in child custody matters is governed by the federal Parental Kidnapping Prevention Act[16] and Alaska's version of the Uniform Child Custody Jurisdiction and Enforcement Act;[17] these acts closely track one another. Both assign children "home state[s]" to determine which state has principal jurisdiction.[18] A child's "home state" is defined as "the state in which a child lived with a parent . . . for at least six consecutive months . . . immediately before the commencement of a child custody proceeding."[19] The courts of a child's home state have subject matter jurisdiction over that proceeding.[20] "Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination."[21]

Thus whether the superior court had jurisdiction to determine custody turns on where the parties' daughter resided during the six months before the proceedings began. The record establishes that Paulita had moved to Alaska with their daughter by June 2012, more than six months before the proceedings began in September 2014.

---

[16]    28 U.S.C. § 1738A (2014).

[17]    AS 25.30.300–.910; *see Ronny M. v. Nanette H.*, 303 P.3d 392, 400 (Alaska 2013) (describing the statutory framework).

[18]    28 U.S.C. § 1738A(c); AS 25.30.300(a). The federal law authorizes jurisdiction only if state law allows it. 28 U.S.C. § 1738A(c)(1).

[19]    AS 25.30.909(7).

[20]    28 U.S.C. § 1738A(c); AS 25.30.300(a).

[21]    AS 25.30.300(c).

Therefore Alaska is the home state, and jurisdiction was proper with respect to child custody.

The superior court also had personal jurisdiction to enter the child support order against Danny. The federal Full Faith and Credit for Child Support Orders Act[22] and Alaska's Uniform Interstate Family Support Act[23] govern personal jurisdiction in child support matters.[24] A court may exercise jurisdiction over a nonresident parent if, among other grounds, the parent "submits to the jurisdiction of this state by consent in a record, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction."[25] Here Danny made a general appearance and filed responsive pleadings without challenging the court's authority. Jurisdiction was therefore proper with respect to the child support order.

**B. The Superior Court Did Not Err In Dividing The Marital Estate Or In Granting Child Custody, But It Was Error To Base Child Support On An Income Of $110,000.**

**1. The order dividing the marital estate is not "clearly unjust."**

Danny challenges the order dividing marital property, which required him to pay Paulita $35,000 by January 31, 2015. He claims that he already paid Paulita more than that amount after they separated in 2011 and that he donated several items to her, including a house in the Philippines, a car, and various furniture items and appliances. Danny further asserts that Paulita was awarded $3,500 at the second hearing, not $35,000.

---

[22] 28 U.S.C. § 1738B.

[23] AS 25.25.101–.903.

[24] *Ronny M. v. Nanette H.*, 303 P.3d 392, 401 (Alaska 2013).

[25] AS 25.25.201(a)(2).

In equitably dividing marital property, a superior court exercises broad discretion.[26] "[W]e will not disturb [a division] unless the result is clearly unjust."[27] When a couple agrees to the division of property, "[the] agreement should be controlling in the absence of fraud, duress, concealment of assets or other facts showing that the agreement was not made voluntarily and with full understanding."[28]

The record supports the property order. Danny agreed to pay Paulita $35,000 both verbally and in writing, affirmed at least three times that the amount was "fair and equitable," and volunteered a payment deadline. Further, during the proceedings, Danny never mentioned making any payments to Paulita other than $1,600 in monthly child support. Receipts in the record total about $24,000 and indicate that Danny generally paid Paulita either $1,500 or $1,600 each month. And although the superior court did initially say "$3,500," he immediately acknowledged his error, corrected himself, and repeated the $35,000 amount twice. Such circumstances do not justify disturbing the property order because the record does not support finding the division "clearly unjust."[29]

### 2. The superior court did not abuse its discretion in entering the child custody order.

Danny appears to challenge the custody order based on his allegation that Paulita kidnapped their daughter and concealed her location.

---

[26]     *Sandberg v. Sandberg*, 322 P.3d 879, 886 (Alaska 2014).

[27]     *Id.* (quoting *Williams v. Williams*, 252 P.3d 998, 1004 (Alaska 2011)).

[28]     *Jordan v. Jordan*, 983 P.2d 1258, 1264 (Alaska 1999) (quoting *Notkin v. Notkin*, 921 P.2d 1109, 1111 (Alaska 1996)).

[29]     *See Sandberg*, 322 P.3d at 886 (quoting *Williams*, 252 P.3d at 1004).

"The superior court has broad discretion in determining custody awards so long as the determination is in the child's best interests."[30] In determining custody, the superior court "may consider only those facts that directly affect the well-being of the child";[31] a child's best interests must be evaluated in light of the AS 25.24.150(c) factors.[32] However, when the parents have agreed on a custody arrangement, a court may engage in a "less searching" inquiry.[33] Unless the child's best interests justify a deviation, a court generally should adopt the parents' agreement.[34] "[A] parent's mere change of mind" does not justify such deviation.[35]

As Danny attested, Danny and Paulita "did not have a disagreement [about custody]." Throughout the proceedings, they agreed that Paulita would have primary physical custody, they would share legal custody, and Danny would have liberal

---

[30]     *Nancy M. v. John M.*, 308 P.3d 1130, 1133 (Alaska 2013) (quoting *Stephanie F. v. George C.*, 270 P.3d 737, 745 (Alaska 2012)).

[31]     AS 25.24.150(d).

[32]     AS 25.24.150(c) ("In determining the best interests of the child the court shall consider . . . ."); *see Crane v. Crane*, 986 P.2d 881, 887-88 (Alaska 1999) ("In making any custody determination — whether following a contested trial or upon the parties' agreement — the superior court must base its decision on the best interests of the child.").

[33]     *Crane*, 986 P.2d at 888; *see also Nelson v. Nelson*, 263 P.3d 49, 53 (Alaska 2011) ("In determining what custody arrangement is in the children's best interests, the superior court may properly take account of a custody agreement entered into by the parents.") (citing *McClain v. McClain*, 716 P.2d 381, 385 (Alaska 1986)).

[34]     *Faulkner v. Goldfuss*, 46 P.3d 993, 999 (Alaska 2002) ("Although a custody agreement does not bind the superior court, the court should deviate from the terms of a custody agreement only upon finding on the record that the child's best interests justify a deviation.") (citing *McClain*, 716 P.2d at 385).

[35]     *Crane*, 986 P.2d at 889.

visitation. Danny and Paulita confirmed that this arrangement served their daughter's best interests; Danny volunteered that Paulita was adequately caring for their daughter; and nothing in the record suggests that these sentiments were incorrect. The court adopted Danny and Paulita's agreement, and there are no red flags that might justify a deviation. Therefore we conclude that the superior court did not abuse its discretion in entering the child custody order.

### 3. The record does not support the child support order.

Danny contends that the child support order is "much higher than fair" because the court did not acknowledge his small retired military pay or the temporary nature of his contract work. He asserts he should pay only $503.37 per month. Paulita argues that the order is "more than fair" because it gives Danny a $10,000 break relative to the $120,000 income ceiling of Rule 90.3. Danny's income, she estimates, exceeded $135,000 in 2013; yet the order is based on an income of $110,000.

We review de novo child support issues that involve "a question of law such as interpreting a civil rule . . . and determining the correct method for calculating child support."[36] Where "no question of law is involved, [a] superior court[] ha[s] broad discretion in making child support determinations"; we review those decisions for abuse of discretion.[37]

Under Rule 90.3(a), which applies to primary physical custody situations, the amount of child support is based on the noncustodial parent's adjusted annual income.[38] Adjusted annual income is the parent's income from "all sources" minus

---

[36] *Wells v. Barile*, 358 P.3d 583, 587-88 (Alaska 2015) (quoting *Millette v. Millette*, 240 P.3d 1217, 1219 (Alaska 2010)).

[37] *Id.* at 588 (quoting *Millette*, 240 P.3d at 1219).

[38] Alaska R. Civ. P. 90.3(a).

mandatory deductions, certain voluntary contributions to retirement and pension plans, and child and spousal support payments arising from other prior relationships.[39] Rule 90.3 defines income broadly; income includes "benefits which would have been available for support if the family had remained intact,"[40] such as income earned abroad,[41] pensions, and veterans' benefits.[42] This rule, however, caps the amount of income subject to the determination: Adjusted annual income exceeding $120,000 generally does not result in additional support.[43]

It appears that the superior court used an incorrect income cap of $110,000 to estimate Danny's income. Because Danny stated he could not fully document his income, the court determined (and Danny agreed) that $110,000 was a fair estimate. The court apparently based this estimate on Danny's 2013 tax return, showing a total income of approximately $135,000, and its assumption that income above $110,000 would not impact the child support determination. But as Paulita observed, Danny's reported income exceeds $120,000, the income ceiling that generally applies to child support determinations.[44]

---

[39] Alaska R. Civ. P. 90.3(a)(1). Mandatory deductions include income taxes, social security tax, Medicare tax, and mandatory contributions to retirement or pension plans. *Id.* (a)(1)(A).

[40] Alaska R. Civ. P. 90.3 cmt. III.A.

[41] *See Hixson v. Sarkesian*, 123 P.3d 1072, 1075 (Alaska 2005) (explaining exchange rates may affect amount of child support paid under Rule 90.3).

[42] Alaska R. Civ. P. 90.3 cmt. III.A. Income does not include veterans' benefits that are means based. *Id.*

[43] *See* Alaska R. Civ. P. 90.3(c)(2).

[44] *Id.*

Further, contrary to Danny's assertions, the superior court was not required to consider the temporary nature of his contract work. Though a court must engage in "*a probing review* of [the noncustodial parent's] . . . financial affairs,"[45] the "determination [of child support] will necessarily be somewhat speculative because the relevant income figure is expected future income."[46] "[A] court must examine all available evidence to make the best possible calculation."[47] When an obligor has had a "very erratic income in the past[,] . . . the court may choose to average the obligor's past income over several years."[48] A court "will not relieve a noncustodial parent from his child support obligations absent an affirmative showing that the obligor parent cannot meet [his] obligation."[49]

Though Danny may hold contract jobs only periodically, like the one he held during the proceedings, he did not provide an income history that would have allowed the superior court to average his income over several years. Danny provided only his 2013 federal tax forms, his retiree account statement, and a few bank statements. The court relied on this information when it determined child support; Rule 90.3 does not require more.

---

[45]     *Mallory D. v. Malcolm D.*, 309 P.3d 845, 848 (Alaska 2013) (emphasis in original) (quoting *Swaney v. Granger*, 297 P.3d 132, 138 (Alaska 2013)).

[46]     Alaska R. Civ. P. 90.3 cmt. III.E.

[47]     *Id.*

[48]     *Id.*; *see also McDonald v. Trihub*, 173 P.3d 416, 427 (Alaska 2007) ("In determining a party's earning capacity for purposes of the rule, the trial court has the discretion to choose the best indicator of future earning capacity based on the evidence before it.").

[49]     *McDonald*, 173 P.3d at 427 (quoting *Kowalski v. Kowalski*, 806 P.2d 1368, 1371 (Alaska 1991)).

Because the record indicates that the court misinterpreted the income ceiling in Rule 90.3 and omitted some of Danny's reported income from its income estimate, we remand the child support order for reconsideration.

## C. The Proceedings Did Not Evidence Bias Or An Appearance Of Bias.

Danny claims the proceedings evidenced bias because the court did not express interest in his claims. This lack of interest, he asserts, led him to not submit evidence about Paulita and her allegedly illegal actions because he wanted to avoid irritating the court. He further claims that the court wrongly credited Paulita's statements and challenges the manner in which the proceedings were conducted.

Judges should seek to "preserv[e] the appearance of impartiality."[50] They also have a duty not to disqualify themselves "when there is no occasion to do so."[51] Critical, disapproving, or even hostile remarks do not, by themselves, evidence bias unless the remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."[52] Similarly, mere "expressions of impatience, dissatisfaction, annoyance and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias.[53]

---

[50] *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015) (quoting *Greenway v. Heathcott*, 294 P.3d 1056, 1063 (Alaska 2013)).

[51] *Griswold v. Homer City Council*, 310 P.3d 938, 943 (Alaska 2013) (quoting *Amidon v. State*, 604 P.2d 575, 577 (Alaska 1979)).

[52] *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *see also Kingery v. Barrett*, 249 P.3d 275, 286 n.43 (Alaska 2011) (quoting *Hanson*, 36 P.3d at 1184).

[53] *Hanson*, 36 P.3d at 1184 (omission in original) (quoting *Liteky*, 510 U.S. at 555-56).

Nothing in the record suggests the court was biased. Danny and Paulita appeared willing to settle, and they acknowledged their difficulties with communicating constructively. The court periodically invited Danny to air his concerns, and Danny did so: Danny stated that Paulita had made visitation difficult, expressed his desire to have meaningful visitation, and noted that Paulita held her own financial accounts during their marriage. The court acknowledged these concerns, invited Danny to submit evidence, and advised Paulita that her initial proposed custody arrangement would not be fair to Danny. Though the court may have expressed doubt regarding some of Danny's concerns — asking, for example, that Danny only introduce evidence if relevant — any such doubt was unremarkable.

The record also does not support Danny's claim that the court wrongly credited Paulita's statements. The final orders adopt the parties' agreements regarding custody and marital property, and the child support order reflects an annual income that Danny affirmed was reasonable. Danny and Paulita also each confirmed that the custody and property agreements were fair and that they would be able to communicate effectively; the court accepted their verbal confirmations. Therefore it is not clear how the court wrongly credited Paulita's statements and, even assuming it did, how such an error would have prejudiced Danny.

Finally, the manner in which the proceedings were conducted does not suggest bias. Throughout the proceedings Danny appeared to be fully engaged. He voiced concerns as issues arose, and he asked to submit evidence, which the court invited him to do. Before each hearing, he confirmed he could hear the court "well." And though he may have been distracted because, as he claims, he was working during the proceedings, nothing in the record suggests the court played a role in that circumstance. The court notified Danny about the preliminary hearing more than one month in advance,

and it gave him two weeks to prepare for the second hearing. Danny never expressed any concerns with the scheduling.

On this record, we find no appearance of bias.

## V.    CONCLUSION

We AFFIRM the superior court's marital property division and child custody orders. We REMAND the child support order for reconsideration consistent with this opinion.