NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALENA POLEN, | ) | |
| | ) | Supreme Court No. S-18477 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-21-04059 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JACOB MILLER, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2000 – November 29, 2023 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Alena Polen, pro se, Anchorage, Appellant. Christopher Smith, Law Offices of Blake Fulton Quackenbush, Anchorage, for Appellee.

Before: Maassen, Chief Justice, Carney, Borghesan, and Henderson, Justices. [Pate, Justice, not participating.]

## I.    INTRODUCTION

A mother appeals the superior court's finding that she and her daughter's father reached an enforceable agreement to enroll their daughter in a particular elementary school. She also appeals the superior court's alternative ruling, which gave the father final decision-making authority over schooling if we failed to affirm the court's finding of an enforceable agreement and the parents could not otherwise agree.

---

\*        Entered under Alaska Appellate Rule 214.

We decline to enforce the agreement regarding school selection and instead conclude that the court did not err by giving this limited final decision-making authority to the father. We affirm the court's order on that ground.

## II. FACTS AND PROCEEDINGS

### A. Facts

Jacob Miller and Alena Polen are the parents of a daughter born in March 2017. They lived together intermittently until around February 2020.[1] According to Miller the parents then shared physical custody of their daughter on an informal basis until he moved for an award of legal custody in January 2021, and the parents stipulated to an interim custody order. Following a series of hearings, the superior court granted the parents 50/50 shared physical custody and joint legal custody except with regard to decisions about vaccines, which were left to Miller.

Meanwhile, the parents had begun to discuss where to send their daughter for kindergarten, which they hoped she would start in the fall of 2022. By November 2021, following a series of emails, the parents apparently had agreed to apply to a private school, Pacific Northern Academy (PNA). In early February 2022 Miller informed Polen by email that he had filed the application, as agreed, but because there was no guarantee of acceptance he would "like to pursue Bowman Elementary as a back up plan." He asked for Polen's input on that option.

Polen responded a few days later, naming three other nearby schools, including Ocean View, as possibilities. In his answering email Miller expressed some dismay that Polen appeared to be wavering on what he believed to be an agreement to enroll their daughter at PNA; he told her he had already begun the enrollment process and believed their daughter had a good chance of acceptance. In response Polen confirmed her interest in PNA and asked for continued updates. Miller reiterated his

_____

[1] The parties dispute the extent of their cohabitation.

request for her input on Bowman as an alternative, adding his impressions of Ocean View and identifying another school liked by some of his neighbors. Polen then added Bayshore as another option and said she would call PNA to get more information.

In late February Miller emailed Polen to tell her that PNA had recommended that their daughter go through a pre-kindergarten program before she would be ready for kindergarten. Polen met with a PNA staff member, who reported to Miller that Polen "was not very receptive to the idea." In late March Miller pressed Polen on whether she still agreed to PNA as their first-choice school; he also informed her that he had entered their daughter in the Anchorage School District (ASD) lottery and she had been accepted to Bowman. Polen reiterated her doubts about PNA as a good fit for their daughter and questioned why Miller had entered the lottery for Bowman when she believed they were zoned for Ocean View.

In Miller's answering email he explained why he continued to believe PNA was their best choice, including the school's reputation, class size, unique teaching style, and classroom environment. As for why he entered the lottery for Bowman, Miller explained that he felt the Bowman optional program would benefit their daughter because of its "similar structure to PNA," with an emphasis on creating a supportive community and "[e]mphasizing leadership, respect, creativity, communication[,] and goal setting." He said that he knew other people who had gone to Bowman or whose children had attended its optional program and had good experiences.

Polen's response was positive: "Thank you for [the] more detailed email in regards [to] school and Bowman school. From what you described it looks like a good school. I would not mind if [our daughter] attends her age class. Please let me know when we can go sign up and talk to the admission [sic]." She then noted that PNA was "not an option" for her anymore for "several reasons," one of which was financial.

In April Miller forwarded to Polen an email from Bowman welcoming the family to the Bowman optional program and including other information about start dates and other "next steps." Polen responded, "Well, I am excited for [our daughter] to join a good school. The registrations start on 7/15/22 [Bowman's registration date]. Thank you."

A month later, in May, Polen emailed Miller expressing her frustration upon learning that he had recently visited PNA with their daughter despite Polen's rejection of that school as an option. Miller quickly responded, reminding her that the visit was for a follow-up assessment they had talked about earlier, to which Polen had also been invited, and which PNA had encouraged the parents to attend regardless of whether they ultimately chose PNA so they could keep their future options open. Miller wrote that PNA's continued recommendation that their daughter start with pre-kindergarten was something "to keep in mind in seeing how [she] progresses at Bowman in the fall."

Later that same evening, Miller's attorney emailed Polen, "In light of our recent interactions, . . . I feel that addressing some of the outstanding issues and some proposed solutions may be helpful to try to reach a resolution without involving the Courts." He wrote, "It is my understanding that both you and Mr. Miller have agreed that [your daughter] will be attending Bowman Elementary for Kindergarten beginning in the fall. As such we propose that we file a stipulation with the Court," which would include terms such as the parents' agreement to notify each other of their intent to attend school functions and to help their daughter with her homework.

Polen did not agree to the proffered stipulation, but instead sent an email ten days later questioning the choice of Bowman because of what she characterized as its "lower test scores and overall achievement in comparison to other schools within the Anchorage District, as well as their overall large focus . . . on children with special needs." She again proposed Bayshore instead. She attached information and statistics

comparing Bowman and Bayshore, although, as she acknowledged at the hearing, it is not evident whether the statistics relate to Bowman's general program, its optional program, or both.

## B.     Proceedings

In June Miller filed a Motion to Enforce the Parties' Agreement Regarding Kindergarten. He argued that "the parties had a valid and enforceable agreement" to enroll their daughter in the Bowman optional program as of late March and that enforcing the agreement was in their daughter's best interests. Polen opposed the motion, disputing that there was any agreement as she had rejected Miller's proposed stipulation and expressly stated her disagreement with the choice of Bowman. Polen proposed Ocean View "[a]s a middle ground," contending that it was their neighborhood school and the school the parents agreed upon based on "cost, location, and convenience of travel."

The superior court held a hearing on Miller's motion in July. It took testimony from both Miller and Polen and then made oral findings on the record. The court found that the parents did have an enforceable agreement to send their daughter to the Bowman optional program. The court found Polen's consent to the plan by reading two of Polen's emails together: the March email in which Polen said she "would not mind" if their daughter "attend[ed] her age class" and indicated her intent to follow up with admissions at Bowman and the April email in which Polen said she was "excited for [their daughter] to join a good school," referencing Bowman's registration date. The superior court also added a "fallback finding," ruling that if on appeal we were to find that the parents' agreement was not enforceable, then Miller would have the authority to decide where to enroll the child if the parents did not otherwise agree, because he had proven himself to be "the more assertive" and "proactive explorer of school options."

The superior court followed up with a written order making similar findings. The written order stated that "the parties had come to an agreement to have [their daughter] attend Bowman Optional" and ordered that the daughter "shall begin kindergarten in August 2022 at Bowman Optional." The order also restated the "alternate ruling" that should its finding of an enforceable agreement be reversed, "Miller is authorized to make the selection of [the daughter's] elementary schooling should the parties continue to disagree."

## III. STANDARD OF REVIEW

"In the absence of factual disputes, we review questions of contract formation and interpretation de novo."[2]

## IV. DISCUSSION

### A. We Affirm The Superior Court's Alternative Ruling That It Is In The Child's Best Interests For Miller To Have The Final Say Regarding Where She Will Be Enrolled In School.

We have not hesitated in the past to enforce parents' agreements relating to their children's custody so long as the agreements "also meet the best interests of the children."[3] But we have emphasized that such agreements have "no binding force on the court," which must "independently determine what arrangement will best serve the child's interests."[4]

The agreement at issue here does not purport to modify the custody order — which did not direct any schooling choices — but rather sought to *enforce* that aspect

---

[2]    *Chilkoot Lumber Co. v. Rainbow Glacier Seafoods, Inc.*, 252 P.3d 1011, 1014 (Alaska 2011).

[3]    *Crane v. Crane*, 986 P.2d 881, 885 (Alaska 1999).

[4]    *McClain v. McClain*, 716 P.2d 381, 385 (Alaska 1986); *see also Berry v. Berry*, No. S-17232, 2019 WL 6724423, at *3 (Alaska Dec. 11, 2019) (explaining that "ordinary rules of contract interpretation do not apply 'when the subject matter of the agreement is child custody'; in those cases, 'the agreement must also meet the best interests of the children' " (quoting *Crane*, 986 P.2d at 885)).

of the order requiring the parents to make major decisions together in their exercise of joint legal custody. Still, we hesitate to apply strict contract principles — offer, acceptance, consideration, and intent to be bound[5] — to an agreement such as this absent express consideration of the child's best interests. Parents may understandably change their minds about important aspects of their children's care, such as the best school or the most appropriate medical treatment; a standard contract analysis should not be used to negate parents' right to change their minds about what is best for their children.[6]

Because we decline to affirm the superior court's contract ruling, we turn to its alternate ruling authorizing Miller "to make the selection of [the child's] elementary schooling should the parties continue to disagree." Our case law makes clear that giving one parent the authority to make educational decisions when the parents cannot otherwise agree may be the most reasonable way to accommodate the child's best interests.[7] The court's alternate ruling was a modification of the custody order then in effect, which awarded the parents joint legal custody except with regard to vaccinations. Before a superior court may modify a custody award, it must "determine[] that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."[8] To determine the best interests of the child, the court applies the nine factors set out in AS 25.24.150(c).[9] The court's

---

[5]     *Crane*, 986 P.2d at 885.

[6]     We do not imply that a detailed best interests analysis is necessary any time the court enforces a parental agreement. Some less consequential agreements — for example, an agreement on the location for dropping off the children during custody exchanges — may be enforced on the assumption that the child's best interests are served by the certainty of enforcement.

[7]     *See Bird v. Starkey*, 914 P.2d 1246, 1250 n.6 (Alaska 1996).

[8]     AS 25.20.110(a).

[9]     *See* AS 25.20.110(g).

determination, however, should focus on those "facts directly affecting the child's well-being."[10]

The parents do not dispute whether there was a change in circumstances,[11] but they disagree on whether the superior court made the required best interests findings. One factor in determining a child's best interests is "the physical, emotional, mental, religious, and social needs of the child"; another is the parent's "capability and desire . . . to meet these needs."[12] The superior court addressed these factors directly when it found that Miller "has been the more assertive" and "proactive explorer of school options." And the record supports this finding. Miller was the driving force behind the search for schools: he sent Polen information about his preferred schools, sought out the Bowman optional program as an alternative when Polen began to express reservations about PNA, described Bowman's positives to Polen in some detail, and at the hearing cogently explained to the superior court what he believed to be unique about the couple's daughter and her needs and why the Bowman optional program was a particularly good fit for her. As the court observed, while Polen did make her own

---

[10] *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985); *see also Schaefer-Mathis v. Mathis*, 407 P.3d 485, 492 (Alaska 2017) ("When determining custody, the superior court is required to consider the nine factors under AS 25.24.150(c), but it 'need not refer to all of [the factors] in explaining its custody decision' and may choose to discuss only those factors relevant to the case." (quoting *Rosenblum v. Perales*, 303 P.3d 500, 504 (Alaska 2013))).

[11] *See McClain v. McClain*, 716 P.2d 381, 385-86 (Alaska 1986) ("When parents fail to come to an agreement or change their minds about a stipulation, this may indicate a lack of the cooperation necessary for joint custody to be successful. The most ardent proponents of joint custody assume cooperation between parents and agreement about child rearing practices as basic requirements for joint custody."); *Collier v. Harris*, 377 P.3d 15, 21 (Alaska 2016) ("[S]ustained noncooperation between the spouses is grounds for denying joint custody, because lack of cooperation hinders good communication in the best interests of the child.").

[12] AS 25.24.150(c)(1)-(2).

suggestions, they were primarily reactive. The court could reasonably find that Miller was more actively engaged in the child's education and better able to provide for her needs in that area. We conclude that the court considered the relevant best interest factors and sufficiently articulated why they favored Miller.

**B.     The Superior Court's Alternative Finding Did Not Violate Polen's Constitutional Rights.**

Polen briefly argues that the superior court's alternative finding assigning Miller the final decision-making authority on schooling violated her procedural due process rights as well as her fundamental right to the care and custody of her daughter.[13] Her due process argument appears to rest on the fact that the parents litigated Miller's motion to enforce the agreement without notice of or opportunity to litigate the court's alternative basis for decision: carving out school choice from joint legal custody and assigning the final say to one parent.

"The right to procedural due process includes the right to 'a reasonable opportunity to know the claims of the opposing party and to meet them.' "[14] But a procedural due process claim cannot succeed without "a plausible claim of prejudice."[15] Polen does not explain how additional briefing, argument, or evidence could have affected the court's decision; we observe, in fact, that at several points in the hearing the court invited Polen to explain further why she should be the one to choose the child's school. Absent a plausible showing of prejudice, Polen's due process argument fails.

---

[13]     Polen's argument on this point is lean, but applying the less stringent standard for self-represented litigants it can be "easily discerned from [her] briefing," and we therefore consider it. *See Leahy v. Conant*, 447 P.3d 737, 742-43 (Alaska 2019).

[14]     *Amy S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 440 P.3d 273, 281 (Alaska 2019) (quoting *Gonzales v. United States*, 348 U.S. 407, 414 n.5 (1955)).

[15]     *Id.*

We also reject Polen's argument that the alternative finding interfered with her fundamental right to parent.[16] She appears to suggest that any court order affecting her "opportunity to participate in joint legal custody regarding the selection of the minor child's school for kindergarten" oversteps the bounds of constitutionality. But "inherent in a child custody dispute between fit parents is the recognition that their rights are not absolute once they have invoked the court's jurisdiction to help them settle their dispute."[17] As "the mediator of necessity," the court may find that the child's best interests require it to enhance one parent's rights at the expense of the other's.[18] Polen's fundamental right to parent was not violated by the court's modification of joint legal custody.

## V.   CONCLUSION

We AFFIRM the superior court's alternative ruling authorizing Miller to select the child's elementary schooling "should the parties continue to disagree."

---

[16]   *See In re Hospitalization of Meredith B.*, 462 P.3d 522, 528 (Alaska 2020) ("It is well established that the interest in the care and custody of one's own child is the most basic of all civil liberties and 'a fundamental right recognized by both the federal and state constitutions.' " (quoting *Sarah A. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 427 P.3d 771, 778 (Alaska 2018))).

[17]   *Berry v. Berry*, No. S-17232, 2019 WL 6724423, at *3 (Alaska Dec. 11, 2019).

[18]   *See Sacharow v. Sacharow*, 826 A.2d 710, 721 (N.J. 2003) (explaining that when parents, each with "a fundamental right to the care and nurturing of their children," dispute child custody, "it is the parties themselves who essentially seek the impairment of each other's rights," and the court "is thrust into the role of 'mediator by necessity' " (quoting *Carr v. Carr*, 691 N.E.2d 963, 965 (Mass. 1998), *cert. denied*, 525 U.S. 1073 (1999))).