**NOTICE**

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TIFFANY A. SEMENZA, | ) | |
| | ) | Supreme Court No. S-18260 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-20-01825 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JEFFREY RADY, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1961 – April 19, 2023 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, John C. Cagle, Judge.

Appearances: Justin Eschbacher, Eschbacher & Eschbacher, P.C., Anchorage, for Appellant. Amy J. Tallerico, Downes, Tallerico & Schwalm Law Firm, LLC, Fairbanks, for Appellee.

Before: Maassen, Carney, Borghesan, and Henderson, Justices. [Winfree, Chief Justice, not participating.]

## I.    INTRODUCTION

The parents of two young children stipulated that they would share legal custody and the mother would have primary physical custody. The court held a trial to resolve some remaining details, including the extent of the father's visitation. Although the court adopted the parties' stipulation in its custody order, its award of visitation

---

\*      Entered under Alaska Appellate Rule 214.

ultimately allowed the father to have as much time with the children as the mother — or possibly more — thus conflicting with the award of primary physical custody. The mother appeals.

We conclude that the father's visitation rights should be structured so as to ensure that the mother maintains primary physical custody, consistent with the parties' agreement and the court's apparent intent in adopting that agreement. Alternatively, if the court intended to deviate from the stipulated physical custody award, its order should contain findings on the statutory best interests factors that justify that deviation. We therefore remand the custody order for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Background

Tiffany Semenza and Jeffrey Rady are the parents of now-two-year-old twins. Tiffany and Jeffrey have never been married but had a brief relationship in 2019. Tiffany lives in Wasilla with the twins and her two other children. Jeffrey lives in Fairbanks with his girlfriend, who at the time of trial was expecting their first child.

Tiffany learned of her pregnancy shortly after she and Jeffrey separated. Since the twins' birth, Jeffrey has been an active part of their lives; he provides consistent child support, visits the twins in Wasilla frequently, and bought a house in Wasilla where he can stay during these visits. At the time of trial he had also requested weekly video calls with the children, though they had yet to happen regularly.

Tiffany works as a counselor. During her workday the children are in daycare. Jeffrey is a construction superintendent. His schedule is particularly busy between March and October, when he often works 12-hour days. Even during this busy season, however, he can request some time off and is usually free a few days a week. Jeffrey also has a significant support system in Fairbanks; his parents and siblings all live nearby.

Tiffany, self-represented, filed a complaint to establish paternity in August 2020; three months later, after hiring a lawyer, she filed an amended complaint for custody. She requested sole legal custody and primary physical custody of the children. Jeffrey, in his answer, objected to Tiffany's request for sole legal custody but agreed she should have primary physical custody.

**B. Proceedings**

**1. The stipulation and trial**

In October 2021 Tiffany and Jeffrey filed a stipulation by which they agreed they would share legal custody and Tiffany would have primary physical custody. A custody trial was held the same day to address all outstanding issues, including the timing and logistics of Jeffrey's visitation. Both Tiffany and Jeffrey testified.

Tiffany testified that until the children reach kindergarten Jeffrey should have visitation every other weekend during the summer. She objected to his request for an additional consecutive two-week visit in Fairbanks. Once the twins are in kindergarten and after, Tiffany proposed that they visit Jeffrey every other weekend plus have a two-week visit with him in Fairbanks; Jeffrey sought visitation with the children for the majority of the summer, beginning one week after school ends and ending one week before school begins.

**2. The superior court's order**

Throughout trial the superior court noted the relevance of the parties' testimony regarding the best interests factors, observing that both parents were "fit and proper" and that they both had "love and affection for their children." In its written custody order following trial, the court ordered that Tiffany and Jeffrey share legal custody and that Tiffany have primary physical custody of the children, as provided in the parties' stipulation. The court also constructed a visitation schedule for Jeffrey's time with the children both before and after they reach kindergarten.

The court ordered that during Jeffrey's construction off-season, November through March, he may exercise visitation in Wasilla "on a two nights on/two nights off basis," to increase by one day on and one day off each year if he consistently follows the schedule. Once the children are in kindergarten, the arrangement changes to one week on/one week off when Jeffrey is in Wasilla. If he exercises his visitation in Fairbanks, he has every other weekend.

For the construction season, April through October, the superior court awarded Jeffrey visitation every other weekend, and if he "is unable to make one of his weekends" and gives Tiffany sufficient notice, "[h]e shall be afforded a makeup visitation weekend within three weeks." The court also awarded Jeffrey a two-week period of extended visitation in the summer months until the children reach kindergarten, which he may exercise in either Wasilla or Fairbanks. The court explained, "The purpose of this visitation is to ensure that the children have their father involved in their lives."

Once the children are in kindergarten, Jeffrey is awarded custody of the children during their summer breaks, in either Fairbanks or Wasilla. This summer visitation begins no later than a week after school is out and ends no later than a week before school starts up again. During this period Tiffany may have visitation once every three weeks from Friday evening until Sunday evening.

Tiffany moved for reconsideration, pointing out a few typographical errors in the order and arguing that the summer visitation award was inequitable and not in the children's best interests. The court issued an amended order that corrected the typographical errors but was otherwise unchanged. Tiffany appeals.

## III.   STANDARD OF REVIEW

Whether a superior court has issued "sufficient findings for informed appellate review is a question of law."[1]  But "[t]he superior court is vested with broad discretion in determining child custody," and a "custody determination will not be set aside unless the record shows that its controlling findings of fact are clearly erroneous or the court abused its discretion."[2]  "An abuse of discretion has occurred if the superior court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[3]

## IV.   DISCUSSION

The parties stipulated that Tiffany would have primary physical custody of the children, and the superior court awarded primary physical custody "[p]er the parties' stipulation" before laying out the details of Jeffrey's visitation.  But the court's prescribed visitation schedule — assuming that Jeffrey avails himself of each opportunity for visitation once the children start kindergarten — is not consistent with the concurrent award of primary physical custody to Tiffany.  We conclude, therefore, that the court on remand should either reconfigure the visitation schedule so that Jeffrey's visitation remains consistent with the award of primary physical custody or provide a hearing and make additional findings to justify a change in physical custody once the children start kindergarten.

---

[1]    *Pasley v. Pasley*, 442 P.3d 738, 747 (Alaska 2019) (quoting *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015)).

[2]    *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997) (citing *Evans v. Evans*, 869 P.2d 478, 479 (Alaska 1986)).

[3]    *Id.* (citing *McDonald v. McDonald*, 718 P.2d 467, 468 (Alaska 1986)).

**A.** **The Visitation Schedule Should Be Structured So As Not To Conflict With The Award Of Primary Physical Custody.**

The court awarded Tiffany primary physical custody "[p]er the parties' stipulation." According to Alaska Civil Rule 90.3, a parent has "primary physical custody" when "the children reside with the other parent for a period specified in the custody order of less than 30 percent of the year."[4] By contrast, a parent has "shared physical custody . . . if the children reside with that parent for a period specified in writing in the custody order of at least 30, but no more than 70, percent of the year, regardless of the status of legal custody."[5]

In her motion for reconsideration, Tiffany contended that if Jeffrey exercises the full extent of visitation the custody order allows him once the children are in kindergarten,[6] he will have approximately 222 days of visitation, giving him significantly more time with the children than Tiffany's 143 custodial days. Our calculations show that the number of Jeffrey's visitation days will vary from year to year, but we agree with Tiffany that he will have physical custody for 30 percent or more of the time and may indeed be entitled to more days than Tiffany.[7] By definition,

---

[4] Alaska R. Civ. P. 90.3(f)(2).

[5] Alaska R. Civ. P. 90.3(f)(1).

[6] In a given year this would include a one week on/one week off schedule for five months (November to March), every other weekend for the remainder of the year, and the entirety of the children's summer break in addition to various holidays.

[7] We agree that Jeffrey would have custody of the children more than 30 percent of the year, but not necessarily that he would have more custodial time than Tiffany. Because the visitation schedule varies from odd to even years and depends on whether Jeffrey exercises visitation in Wasilla or Fairbanks, the number of days to which he is entitled is not fixed. By our calculations, he will have the most custodial time in odd years if exercised in Wasilla and the least in even years if exercised in Fairbanks. Regardless, he will always be entitled to custody 30 percent or more of the year.

an award of 30 percent or greater physical custody to Jeffrey changes the custody award to one of shared physical custody once the children start kindergarten.[8]

Jeffrey argues that he is unlikely to use all his possible visitation given his inflexible work schedule during the construction season and his inability to spend extended periods of time in Wasilla once the children reach kindergarten.[9] He argues that it is "wholly unrealistic" that he will have more time with the children than Tiffany will. While that may be true, a custody award should not rest on assumptions that the parties will not fully exercise their rights under its terms.

We therefore remand for the superior court to, as one alternative, establish parameters around Jeffrey's visitation to ensure that it does not exceed the number of days necessary for Tiffany to maintain primary physical custody.

**B.** **Alternatively, The Custody Award Should Contain Findings That Support Changing Physical Custody When The Children Reach Kindergarten.**

Alternatively, if it is the superior court's intent that physical custody be modified when the children begin kindergarten, it should schedule another evidentiary hearing and make best interests findings that support this result.[10] The children's best interests drive a custody decision regardless of whether the decision is based on "a contested trial or upon the parties' agreement."[11] "Although a custody agreement does not bind the superior court, the court should deviate from the terms of a custody

---

[8]    Alaska R. Civ. P. 90.3(f).

[9]    At the time of trial, Jeffrey and his girlfriend were expecting a baby. Jeffrey's family situation in Fairbanks may limit his ability to travel to Wasilla to see the twins in the future.

[10]    *See* AS 25.24.150(c) (listing the best interests factors).

[11]    *Crane v. Crane*, 986 P.2d 881, 887 (Alaska 1999) (citing *Hakas v. Bergenthal*, 843 P.2d 642, 644 (Alaska 1992); *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1190 (Alaska 1987)).

agreement only upon finding on the record that the child's best interests justify a deviation."[12]

Here, the superior court noted that its decision was "[p]ursuant to the best interest[s] factors as set out in [AS] 25.24.150" but did not explore the factors in any detail. Nothing in the order indicates that the children's best interests support changing physical custody once they start kindergarten, thus justifying a deviation from the parties' agreement that Tiffany have primary physical custody. If that was the court's conclusion, further findings are necessary to support it.[13]

## V.   CONCLUSION

We REMAND to the superior court for further proceedings consistent with this opinion.

---

[12]   *Faulkner v. Goldfuss*, 46 P.3d 993, 999 (Alaska 2002) (citing *McClain v. McClain*, 716 P.2d 381, 385 (Alaska 1986)).

[13]   *See Sherrill v. Sherrill*, 373 P.3d 486, 492 (Alaska 2016) (concluding there were no "red flags" about either parent that would justify deviation from their custody agreement and stating that "[u]nless the child's best interests justify a deviation, a court generally should adopt the parents' agreement"); *Faulkner*, 46 P.3d at 1000-01 (holding that deviation from parties' custody agreement was justified when court made "specific findings that [a deviation] was in the children's best interests").